THOMAS et al. v. NANTAHALA MARBLE & TALC CO.

(Circuit Court of Appeals, Fourth Circuit. October 4, 1893.

No. 45.

**1. Injunction—Pleading—Discretion of Trial Court.**
  In a suit to enjoin a trespass on lands, and the taking of ores therefrom, the object being merely to preserve the rights of the parties until an action at law can be brought to determine the title, the failure of the

bill to set out complainant's chain of title is not fatal; and where answer is filed without interposing a demurrer, the sufficiency of the bill in this respect is a question for the trial court to deal with in its discretion.

2. SAME—DERAIGNMENT OF TITLE—SUFFICIENCY OF BILL.

In such case, a bill which describes by metes and bounds the land claimed by complainant, avers that he had possession thereof at the time of the alleged trespass, and that he owns the same in fee under the laws of the state, may be regarded, after answer filed, as sufficient, without a particular statement as to how he acquired title.

3. FEDERAL COURTS—EQUITY JURISDICTION—STATE PRACTICE—LAND TITLES.

The equity jurisdiction of the federal courts cannot be controlled or affected by modifications of the general practice which have grown up in the various states, even in respect to land titles; but such jurisdiction remains as established by the general principles of equity jurisprudence.

4. INJUNCTION—TRESPASS—RECEIVER—MINING LANDS

On a bill to enjoin a trespass and the taking out of ores, where the ground in dispute is a narrow strip, adjoining which both parties have undisputed possession of other lands, which they can continue to work, the case is not one for a receiver, but for an injunction to maintain the status quo until the title can be determined by an action at law.

5. SAME—INJUNCTION PENDING ACTION AT LAW.

In such a case, where the affidavits strongly tend to show that complainant had undisputed possession of the ground until driven off by violence and threats of bloodshed,—constituting the trespass complained of and which is enjoined,— the defendant in the injunction suit may be properly required by the decree to become plaintiff in a suit at law to determine the title.

Appeal from the Circuit Court of the United States for the Western District of North Carolina.

In Equity. Suit by the Nantahala Marble & Talc Company against W. S. Thomas and others to enjoin a trespass upon mining lands, and for an account and other relief. The court below granted an injunction, pending which it required defendants to bring an action at law to determine the title to the disputed lands. Defendant Thomas and another appeal. Affirmed.

Statement by MORRIS, District Judge:

The appellee, the Nantahala Marble & Talc Company, a corporation of West Virginia, filed its bill of complaint in the circuit court of the United States for the western district of North Carolina, October 13, 1892, against Thomas, Bruce, Richard, and Hewitt, all citizens of North Carolina, except Bruce, who was a citizen of Virginia, alleging that the complainant corporation owned in fee, and, at the time of the trespasses complained of, was in possession of, certain lands described by metes and bounds in the bill, situated on the Nantahala river in North Carolina, which were of value exceeding $2,000, and were valuable only on account of the talc and marble; that the defendants had wrongfully entered upon complainant's land, and were taking from it large quantities of talc, and grinding and manufacturing it and shipping it away, and doing irreparable damage and injury to the complainant, and that the defendants were insolvent. The bill prayed for a preliminary injunction restraining the defendants from further trespassing, and for an account, and for other relief.

The court fixed a day for the hearing of the application for injunction, and granted a restraining order as prayed. The defendants Thomas and Bruce answered, denying that they, or any one under them, were trespassing upon the lands described in the bill, and denying that they were insolvent. They alleged that they were the owners of 150 acres of land on the Nantahala river, and that their codefendants, Richard and Hewitt, were their lessees,

and as lessees had been mining and manufacturing talc from their land since 1887, but not outside of those limits, utilizing the land to the best advantage as prudent miners with machinery and works which would be greatly damaged by any interference, and that they were able to respond in damages for any supposed injury to the complainant, and that the complainant had a complete and adequate remedy at law to try its title by ejectment, and to recover any damages. It appeared from the affidavits on behalf of both parties read at the hearing of the application for the injunction that the land in controversy was a small triangular strip containing about 5¾ acres, lying between the undisputed lands of both parties, and that the controversy arose from a dispute as to the proper location of the dividing line. The affidavits submitted at the hearing tended to show that the lands of both parties had belonged to the estate of one Jarrett; that the whole tract of Jarrett's land had been surveyed and divided into parcels, and sold to different purchasers in 1876, and affidavits filed by the complainant sworn to by heirs of Jarrett and by surveyors, who had platted the land for division, and by persons familiar with the property, some of whom had been employes of defendants, tended to show that the dividing line claimed by the complainant had been marked by stakes driven in the ground and trees blazed along the line, and had been acquiesced in and consented to until the complainant, in September, 1892, began erecting a fence along the line, when the defendants, with a force of men, and against the protest of complainant, tore down the fence, and put up a brush fence about 300 feet back on complainant's land, and with a strong force drove away complainant's workmen, and proceeded to uncover the talc on the disputed land, and mine it out, working with great expedition for 10 or 12 days, until stopped by the restraining order.

On November 15, 1892, the court having heard argument, and having considered the bill, answer, and affidavits, granted the injunction, and directed that the defendants might bring an action in that court to try title to the land, which action should stand for trial at the next term, and in which the complainant, as defendant, should admit service of process and possession of the land. The defendants Thomas and Bruce have appealed, and assign for error (1) that the case made by the bill was not one of equity jurisdiction, as there was an adequate remedy at law; (2) that there was no pending ejectment suit, nor any reason asserted for not bringing one; (3) that there was no irreparable injury, as the defendants were solvent; (4) that the bill did not properly set out the complainant's title; (5) that the court erred in directing that defendants should be plaintiffs in the ejectment to be instituted, when it was the defendants who were in possession.

F. C. Fisher, for appellants.

Charles Price, for appellee.

Before FULLER, Circuit Justice, and HUGHES and MORRIS, District Judges.

MORRIS, District Judge, after stating the case as above, delivered the opinion of the court.

The appellants contend that the bill is defectively framed, in that the complainant does not deraign its title; that is to say, does not set out and state in detail the chain of conveyances or the immediate deed upon which it relies for its title. This is an omission, and might have been demurrable. The rule, however, which in such cases requires the complainant to set out his title, is one of practice and convenience, and not a matter of jurisdiction, and, after answer, may be dealt with by the court in its sound discretion. In this case, at the hearing, from the answer and affidavits, it became evident that the parties were claimants of adjoining lands by titles derived from the same source, and that the dispute was as to the location upon the ground of a division line. The affidavits—some

from defendants' own employes—tended to show that the line had been several years before marked with stakes driven in the ground and by blazes upon trees, and had been consented to and acquiesced in until a few days before the filing of the bill, when the defendants, with overpowering force and threats of bloodshed, had driven away the complainant's employes, and was proceeding to excavate and carry away the talc. The suit was not one in which the equity court was to pass finally upon the merits of the respective claims of title and pronounce upon their validity, but was intended merely to preserve the rights of the parties until in a suit at law they could be determined. It was, therefore, not like a bill to quiet title, or similar proceeding, in which the complainant should of necessity be required to set out in detail the title the court is to pass upon. Stark v. Starrs, 6 Wall. 410; Goldsmith v. Gilliland, 22 Fed. Rep. 865. If sufficient jurisdictional facts were alleged in the bill, it was for the court upon the hearing for injunction to say whether, as to the details of its case, the complainant had made a full, fair, and candid disclosure of the facts which the court was called upon to consider. In its bill the complainant described by metes and bounds the land which it asserted it had in possession at the time of the alleged trespass, and which it asserted that it owned in fee under the laws of North Carolina; and, under the circumstances of this case, the court was right, after answer, in not regarding as fatal the omission to set out with more certainty how the complainant had acquired its title.

It must be conceded that the equity jurisdiction of the circuit courts of the United States, in a proper case, to enjoin the destruction of the substance of an estate by mining, cutting down trees, or removing coal, pending litigation over the title, even when the alleged trespasser is solvent, is in common use, (2 Daniell, Ch. Pr. § 1631,) and has been sanctioned by the supreme court of the United States in Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. Rep. 565. Whether any particular case calls for the issue of this preventive writ depends upon its circumstances. It is urged upon behalf of the appellee that in North Carolina it is the settled policy of the state, as declared by its supreme court, not to interrupt mining enterprises by injunction in cases of disputed titles, but to appoint a receiver, if necessary, and hold the fruits of the enterprise until the title is adjudicated. It has been so held by the supreme court of North Carolina in several gold mining cases, among others in Mining Co. v. Fox, 4 Ired. Eq. 61; Falls v. McAfee, 2 Ired. 236; Parker v. Parker, 82 N. C. 165. It was conceded in these cases that it was the common practice of equity courts to restrain by injunction the carrying away of the substance of an estate, but it was held that, as the only use which could be made of the mineral lands of North Carolina was to mine the ores, and, if this was done in a proper manner, the ore could be compensated for, and as it was the policy of the state of North Carolina to develop its mining resources, and as in gold mining the enterprise required a large outlay of capital and the maintenance of an expensive equipment of machinery and workmen, that it was more consonant with equity

in such cases that a receiver should be appointed, rather than that the whole enterprise should be stopped by injunction. In Purnell v. Daniel, 8 Ired. Eq. 9. However, in which there was a dispute as to the boundaries of adjoining landowners, and an allegation of danger of irreparable damage by overflow from a dam about to be erected, and in which there was none of the hardship of stopping a large established business, the same court did not hesitate to approve the issuing of an injunction to prevent the erection of the dam until the question of boundaries could be settled by ejectment.

It has been urged in behalf of the appellants that the federal courts, when administering the general principles of equity, should be controlled by the modifications of the general practice which have grown up in respect to land titles, and have been sanctioned by the state courts, because of the peculiar conditions of the country. But it is settled that neither the state practice nor its legislation can limit or expand the equity jurisdiction of the federal courts. Their equity jurisdiction remains as established by the general principles of equity jurisprudence. Fenn v. Holme, 21 How. 481; Thompson v. Railroad Co., 6 Wall. 134; Payne v. Hook, 7 Wall. 425; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. Rep. 712; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. Rep. 883, 977. But one of the fundamental rules governing all equity courts is that an injunction, when allowable, is granted or refused according to the essential requirements of the particular case. Its object is to preserve rights and prevent irreparable damage, and one frequent use of an injunction is to prevent a going business from the disorganization and loss which may result from a harsh exercise of a legal right. The practice of the North Carolina courts in not stopping the operations of an established and working gold mine pending litigation as to the title of the land, when the rights of the parties could be better preserved by a receiver, is conformable to the principles of equity as everywhere administered.

It does not appear to us, however, that this case presented similar considerations. Here were two owners, one engaged in digging talc and the other about to engage in it on large tracts of adjoining land, with a small strip between them, claimed by both. The affidavits tended to show that the complainant had been in peaceable possession of the strip, and that the defendants, with force and threats, had driven off complainant's men, and were rapidly digging out the talc. Nothing appeared tending to show that the mining operations of either would be materially disturbed by being enjoined from using the disputed strip pending an ejectment suit, as both were the owners of other adjoining lands containing the same minerals. It did appear, however, that the controversy was likely to lead to breaches of the peace, and that, if defendants were not enjoined, they would speedily dig out and carry away all that made the land valuable to the complainant. The case, as presented, was not one in which there were any considerations to induce the court to appoint a receiver as a substitute for a preventive injunction, and was one in which an injunction was appropriate and proper.

It is further contended by the appellants that the circuit court erred in directing that the appellants should be the plaintiffs in the ejectment suit. The affidavits tended very strongly to estab- lish that the complainant was in possession, and that the forcible entry made by the appellants against its protest was in the nature of a trespass, and we think the fair conclusion to be deduced from the proof which the court had before it was that the complainant ought to be defendant in the ejectment suit.

Finding no error in the order appealed from, it is affirmed, with costs.