NANTAHALA MARBLE & TALC CO. v. THOMAS et al.

THOMAS et al. v. NANTAHALA MARBLE & TALC CO.

(Circuit Court, W. D. North Carolina. August 3, 1896.)

1. JURISDICTION—SALE OF DECEDENT'S LAND.
   Since, by the North Carolina law, proceedings for the sale of a decedent's lands to pay debts may be taken in any of the counties in which decedent had lands, it will be presumed that a probate court which assumed jurisdiction to sell lands in another county had jurisdiction to do so.

2. PROCEEDINGS IN STATE COURT—CORRECTION.
   A United States court has no jurisdiction to construe the proceedings of a state court, and to correct a supposed mistake in the description of land covered by such proceedings.

3. LACHES—MISTAKE IN PROCEEDINGS.
   Purchasers of decedent's land under a decree of court, who have an equity in certain other land, on the ground that this was intended to be also sold and conveyed under those proceedings, cannot, after delaying for 12 years, enforce that equity, as against one who purchased from the heirs of such decedent all their land, except that sold in those proceedings, without any knowledge of the mistake in the proceedings.

4. SALE OF DECEDENT'S LAND—EFFECT OF DECREE.
   Where a deed of land, executed by administrators, as the organ of the court, defines the land sold, fixes the boundaries, and conveys the legal title, nothing but an equity vests in the purchaser, as to other land not included in such deed.

F. A. Sondley, Chas. Price, and R. L. Leatherwood, for plaintiff.
Duff Merrick and Merrimon & Merrimon, for defendants.

SIMONTON, Circuit Judge. To a proper understanding of this case, a full statement is necessary:

A bill was filed by the complainant against the defendants, alleging that it was the owner in fee, and in possession, of two tracts of land in the county of Swayne (formerly Macon county), in the state of North Carolina, describing them by metes and bounds; that the said lands were held for mining purposes; that the defendants had wrongfully entered on said lands, and were in the wrongful possession thereof, taking therefrom large quantities of talc, and interrupting the work of the complainant, inflicting upon it irreparable injury. The bill prayed an injunction. A restraining order having been issued, the motion for injunction was set down to be heard at the next term ensuing of the court, at Asheville. The defendants answered the complaint, and the cause came on to be heard at a regular term of this court on bill, answer, and affidavits filed by both parties. Upon the hearing the court continued the injunction until the final hearing of the cause, and made a further order as follows:

"That the defendants may bring an action of ejectment, returnable to the next term of this court, if they shall be so advised, to try title to the land in controversy in this cause, and that for the purposes of such action the plaintiffs shall be, and are hereby, ordered to accept service of this process, and admit possession of said land referred to in complainant's bill of complaint."

From this order and decree an appeal was taken to the circuit court of appeals, and after hearing thereof the decree below was affirmed. 7 C. C. A. 330, 58 Fed. 485. This result is strictly in accordance with the rules and practice of the court. The bill charged the destruction of the substance of an estate by mining. The answer denied the title of the complainant, and set up adverse title in the defendants. This last was an issue properly triable in a court of law, before a jury. The court provided for such a trial, and meanwhile continued the injunction pending the litigation. 2 Daniell, Ch. Prac. § 1631; Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. 565. The cause coming back to the circuit court, the defendants obtained leave to file a cross bill, and so much of the order as granted leave to make up an issue at law was continued. The cross bill has been filed, and so has the answer thereto. A mass of testimony has been taken, and the case is now up for a full hearing. The evident purpose and intent of the cross bill are to anticipate the trial of the action at law by setting up certain matters of equitable cognizance, upon the consideration and determination of which the rights of the defendants may be confirmed and established. The gist of the allegations of the cross bill is this: The land in controversy formerly belonged to the estate of N. S. Jarrett, deceased, intestate. About the 1st of January, 1876, his administrators filed their petition in the probate court of Macon county, N. C., setting forth that the personalty of their intestate was insufficient to meet the demands on the estate, and praying leave to sell certain lands in Swayne county, of which he had died seised, in aid of the personalty in liquidating the debts of the estate. The petition described the lands which the administrators desired to sell as:

"Tract No. 34 in district No. 12, containing 64 acres; tract No. 33 in district No. 12, containing 70 acres; and also a part of two other tracts, Nos. ——, adjoining the said tracts Nos. 33 and 34, containing 16 acres; making, in all, 150 acres."

The heirs at law of Jarrett having been made parties, and the facts of the petition having been admitted by them, the court duly made its order on 29th January, 1876, directing the petitioners to sell the lands mentioned in the said order, or so much thereof as may be necessary. And on 10th February next ensuing the lands were sold at private sale to the United States Soapstone Manufacturing Company, the sale was confirmed on the same day, and on the 17th of February the administrators executed a deed conveying the said lands to the said company, which deed was duly recorded. The land described in this deed embraces the two tracts, Nos. 33 and 34, which are not disputed, and then adds:

"Also a part of two tracts, Nos. 1,090 and 3,287, adjoining to No. 33, on the same side of said river [Nantahala], beginning on a lyn, N. W. corner of No. 33, and running S., 57 E., with a line of the same eighty, to a spruce pine on the banks of said river, and corner of said No. 33, same course whole dis-

tance, eighty-five poles, to a stake, So. E. corner of No. 1,090, on the east side of said river; thence down said river, with the line of No. 1,090, forty poles, to a stake thereon, to the beginning on said lyn,—containing 16 acres; in all, one hundred and fifty acres."

On the same day the heirs at law of Jarrett, in consideration of the purchase money paid to the administrators, executed a conveyance in fee of the same lands to the United States Soapstone Manufacturing Company, the description being in all respects the same. Perhaps it is well to say here that the course, "down said river with the line of No. 1,090, forty poles, to a stake," and thence to the beginning corner at the lyn, would not inclose a tract of 16 acres, but only 10⅓ acres, and would not include the locus in quo. If the distance on this course was 61 poles, and thence to the beginning corner on the lyn, it would include the locus in quo, and would inclose a tract of over 16 acres. In this connection it was stated in argument by complainant, and not denied, that the number of acres in tracts 33 and 34 are not accurately stated. The cross bill then goes on to allege that in their petition to the probate court the petitioners intended to ask leave to sell enough of tracts Nos. 1,090 and 3,287, adjoining to No. 33, to make in all 150 acres, so that, including 64 acres in 33 and 70 acres in 34, there would be 16 acres taken from Nos. 1,090 and 3,287; that, upon the order of sale having been made, a survey on the ground was made, and as the result these 16 acres were provided for; that this was the intent of all the parties, and so fully understood,—the sale, indeed, being the result of previous negotiations between the administrators and the United States Soapstone Manufacturing Company, the purchaser. The cross bill also alleges that, in directing title to be made to the purchaser, the court intended to direct the petitioners to convey to the purchaser, in addition to the tracts Nos. 33 and 34, also a part of Nos. 1,090 and 3,287, of the same boundaries described in the deed, but running down the river 60 poles, and not 40 poles, but by an inadvertence and mistake of the draftsman the word "forty" was inserted, instead of "sixty." The bill alleges that after the execution of the deed the purchaser took possession of the whole 16 acres. After this purchase the soapstone company failed. Its lands were sold by the sheriff, and, through intermediate conveyances, they passed to the defendants Thomas and Bruce, who obtained a deed therefor in 1888. In each conveyance the description of the land is the same; in each, the distance down the river is put at 40 poles. Subsequently to this sale the administrator of Jarrett obtained an order to sell all the remaining lands of the intestate, which sale was consummated. The conveyance excepts the lands sold to the soapstone company, and the description of the land excepted is that in the deed to that company, including the distance on the course down the river, which is put at 40 poles. The complainants, by various intermediate conveyances, hold these lands. The prayer of the cross bill is for a decree correcting the deed of 17th February, 1876, from the administrators to the soapstone company, so as to make the call down the river 60 instead of 40 poles, and also a correction of the petitions, orders of sale, reports of sale, and the decrees

confirming the same, and ordering title to the same to the United States Soapstone Manufacturing Company be so made and amended as to show definitely the 16 acres of land intended to be sold and purchased as aforesaid by said company, and for general relief. The answer to the cross bill denies the jurisdiction of this court to grant the relief prayed, inasmuch as the proceedings sought to be corrected are in a court of co-ordinate and full jurisdiction, in which alone such corrections can be made. It denies the jurisdiction of that court to make the order of sale, as the probate court of Macon county had no jurisdiction of lands in Swayne county. It charges that the proceedings themselves are not in accordance with the statute in that behalf made and provided, in many particulars mentioned, and so are irregular, null, and void. It charges that the deed itself, by reason of the indefinite, vague, and uncertain description of the 16 acres. is, as to them, null and void, and conveys only tracts Nos. 33 and 34. It contends that the claim of the cross bill is stale, and pleads in various forms the statute of limitations.

The questions presented under this cross bill and the answer thereto go to the marrow of this case, and are of the most grave character. They involve the jurisdiction of this court, and of the probate court of North Carolina. They seek the correction of petitions, orders of sale, reports of sale, and decrees confirming the same, made in the last-named court. They seek, not only the correction of an alleged mistake in a deed made pursuant to the order of the probate court, and accepted as well by the purchaser as by all parties to it, and acquiesced in by all subsequent mesne grantees, down to the defendants. It also seeks the reformation of a deed made under similar authority by the same administrators to the persons under whom the complainants claim, so that the description of the land recited in said deed be changed in a material point, and be made to conform to the changes the defendants seek in the deed to the soapstone company, under whom they claim, and necessarily is involved the correction of the same mistake made in every intermediate conveyance under which the complainant and defendants claim title, respectively. The theory on which the cross bill proceeds is that the mistake is of so plain, palpable, and evident a nature that a bare inspection of the deed discloses it; the deed professing to convey 16 acres, while the boundaries, courses, and distances enumerated in the deed show an area of much less than 16 acres.

The case before the court is this: The defendants hold title to the three tracts of land under conveyance by deed. The third of these tracts is embraced within lines which cover only $10\frac{1}{3}$ acres. They claim, however, that they are entitled to an additional $5\frac{2}{3}$ acres, which were conveyed to the persons under whom the complainant claims, and that their claim is based on an equity binding on the conscience of the complainant, and enforceable in this court. This equity grows out of a mistake in the proceedings of the probate court of Macon county, N. C. The administrators had no estate whatever in the lands of their intestate. Nor were these lands primarily liable for his debts. By statute, the administrators were authorized, in case of a deficiency of personalty, to call upon the heirs at law to

assist in meeting the debts of their intestate. To accomplish this, they could institute proceedings in the court exclusively charged with the administration of estates of deceased persons,—the probate court,—calling upon the heirs at law of the intestate to come in and show cause, if any they could, why such assistance should not be given. The matter thus coming up, the administrators representing the debt unpaid, the heirs at law representing the land, the court takes the matter into consideration, and decides first upon the necessity of the prayer, and next upon the quantity of land needed for its purposes. Every subsequent step in the proceedings is the action of the court. It orders the sale to be made by its own agents, the administrator, or any other person whom it may select. Such sale is only the execution of the power of the court. When made, it is reported, and only when confirmed by the court, and approved, is the sale consummated. The mistake, therefore, if any exists, is a mistake of the court, in its proceedings, decrees, and final action. Under any circumstances, a mistake such as this is alleged to be must be established, not simply by preponderance of evidence, but by proof, clear, strong, and convincing. U. S. v. Budd, 144 U. S. 154, 12 Sup. Ct. 575; Ely v. Early, 94 N. C. 1.

The question of jurisdiction lies at the threshold. The complainants deny that the probate court of Macon county had any jurisdiction over the lands, which lie, as is admitted, in Swayne county. The court of probate has jurisdiction over the subject-matter of this suit, —the sale of lands in aid of the payment of debts. The proceeding, under the statute, must be taken in the county in which the lands lie. But, if decedent had lands in more than one county, the proceedings could be taken in any one of the counties in which the intestate had lands. In the present case the court assumed jurisdiction, and it may well be presumed that the facts giving it jurisdiction were made to appear to its satisfaction. We have, then, a matter heard and determined in a court of competent jurisdiction,—a court of record; an alleged intention of that court; and a plain mistake in attempting to carry out that intention. Who has the right to decide what was the intention of that court? Who shall say how the court desired to carry out that intention? Surely, the court itself. No reason whatever has been shown why resort was not had, or could not be had, or cannot now be had, to that court. No court has the power to correct a record, to construe or carry out the supposed intention of another court. Adams v. Reeves, 76 N. C. 412; 1 Black, Judgm. § 125. Least of all can this be done by a court of the United States dealing with the records of a state court. Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369; Trust Co. v. Seasongood, 130 U. S. 482, 9 Sup. Ct. 575; White v. Crow, 110 U. S. 183, 4 Sup. Ct. 71. Even were this court to enter upon this examination, when can the intention of the court be best ascertained? By its solemn adjudication and decree, confirming what has been done. Is there such a flagrant mistake in this decree as to create the conviction that the court could not have meant what it said? The mistake relied upon is that the description of the deed was so palpable that a slight inspection would show it. It intended to convey 16 acres. It

only conveyed 10⅓. Yet this same land, conveyed under the same description, passed not only the inspection of the court, but also that of sundry intermediate purchasers; and no one, then or now, but the present defendants, complained of any mistake.

There is another point of view from which this case can be considered. Assuming that the defendants stand in the shoes of the United States Soapstone Manufacturing Company, and that there was a mistake made, not only in the deed of the administrators, executed under the order of the probate court, but also in the deed of the heirs at law of Jarrett, conveying their interest in said lands to this company, then the soapstone company obtained a legal title only in so much of the land as was covered by the boundaries of their deed, with an equity in the remaining 5⅔ acres, which was intended to be conveyed. The legal title in these 5⅔ acres still remained in the heirs of Jarrett. This equity laid dormant, and was not enforced by the soapstone company, or any of its assigns, until 1888. In that year the heirs of Jarrett, by their deed, conveyed to the complainants all their lands, excepting only therefrom the lands conveyed to the soapstone company. The deed conveying these lands was on record. The lines of the lands were distinctly and clearly set forth, and up to these lines the lands were conveyed to the complainants. The evidence does not disclose that any notice whatever was given to the complainants of any mistake in the deed of the excepted lands, except perchance that a call was made for 16 acres. But, the boundaries of this land having been given, there was no reason why the complainants should go into a calculation, and ascertain whether the exact area was embraced in these boundaries. Indeed, with this they had no concern. The original purchasers had accepted the deed, had acquiesced in it, had made no complaint about it. The complainants were miners, had purchased this land for mining purposes, and this tract now in dispute was most valuable for their purpose. Induced by this, they made the purchase, and have paid their money. Can the equity of the soapstone company now be enforced against them? Has it not been lost by the laches of the soapstone company? "Laches does not, like limitation, grow out of the mere passage of time. It is founded upon the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or parties. Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873. If the soapstone company had an equity to correct the mistake, so, also, the complainants had their equity to be protected in their purchase. They have also the legal title. When the equities are equal, the law will prevail.

The learned counsel for the defendants insist that the title under which they claim is derived from the order of the court of probate authorizing the sale, and that upon the entry of the order confirming the sale the title passed to the soapstone company. But it will be observed that the petition of the administrators seeking the sale of lands in aid of the personalty does not describe with any sort of certainty any other tracts of land than those numbered 33 and 34. As to the rest, it speaks of 16 acres, part of Nos. ———. And in the order confirming the sale, although the number of the tracts are giv-

en, there is no other description than 16 acres, parts of Nos. 1,090 and 3,287, adjoining No. 33 on the same side of said river. Nor did the petition, nor did the decree, ask or authorize the sale of all the lands. The one asked, the other authorized, the sale of so much thereof as should be necessary. What 16 acres, and how located and defined? If the decree alone be evidence of title, how can it escape the defect of being too indefinite and uncertain? The deed executed by the administrators as the organ of the court defines the land sold, fixes the boundary, and conveys the legal title, the legal title to so much land only as is included within these boundaries. It may be said, in a sense, that the order and decree of the probate court vested an equitable title in the soapstone company, in 150 acres of land carved out of other lands. But this only means that it gave that company a right to ask and to receive a conveyance, by which conveyance it would be invested with the legal title. A conveyance was made, accepted, and acted under. As to all lands not included therein, no legal title passed; nothing remained but a right—call it an equity—for the reformation of the deed. That has been lost by laches, for other rights and interests have arisen from a change in the conditions or relations of the property and of the parties. Hanner v. Moulton, 138 U. S. 495, 11 Sup. Ct. 408, quoting Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610; Richards v. Mackall, 124 U. S. 183, 8 Sup. Ct. 437.

The testimony taken in this cause has been carefully read and considered. It is voluminous, and contradictory to a degree. Very much of it does not bear upon the question now under discussion,—whether the defendants have had possession, and have exercised acts of ownership upon the land in dispute; whether complainants have had such possession and exercised such ownership; all evidence respecting the title. These are questions to be determined when the trial of title is had in its appropriate tribunal,—a court of law. The present discussion is over the question whether there was a mistake made in the decree, order, and action of the probate court of Macon county, or in the deeds of conveyance made contemporaneously therewith: and, if there be such a mistake, whether this court can correct it, and whether it creates in the defendants an equity which this court will establish and enforce. There can be no doubt that the defendants, present owners of the lands purchased by the soapstone company, are honestly persuaded that there was a mistake made in the conveyance to that company. For present purposes, it has been assumed that the defendants have the same right to seek a correction of such a mistake as the soapstone company would have had. The result of the examination of the questions is that this court has no right to amend any proceedings, order, or decree of the probate court in a matter within its jurisdiction, and so much of the prayer of the cross bill to this end must be refused; that, as to the mistake in the deeds of the administrators and the heirs at law of Jarrett, even if it be assumed that such mistake was made, such equity, if it existed, has been lost by the failure to assert it until the rights of the complainants had become vested, and the legal title acquired by them. Nor, upon a review of the testimony in the cause, can it be

said, whatever may be the preponderance of the evidence, that the mistake has been established by proof, strong, clear, and convincing. The most conclusive evidence of a mistake in the deed is the establishment of the line 40 poles down the river, and thence to the lyn, the beginning corner. It was so evident that this did not inclose the 16 acres that the draftsman of the deed saw it at once, and so would any one who knew anything of the admeasurement of lands. Yet the parties to the transaction, purchaser and vendors, and each succeeding grantee, accepted and acquiesced in this description, and these lines and corners. One may well doubt if this was really a mistake, and whether, notwithstanding the area called for, the parties in interest had not settled upon the lines in the deeds. It is ordered that the cross bill be dismissed, each party paying his own costs thereunder. It is further ordered that the injunction heretofore issued be continued, and that matters remain in statu quo until the question of title be settled by action at law or otherwise.