NANTAHALA MARBLE & TALC CO. v. THOMAS et al.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1901.)

No. 381.

1. DEEDS—EVIDENCE TO IMPEACH—MEMORANDUM ON RECORD.
   An unsigned memorandum on the margin of the record of a deed is not admissible in evidence to affect the validity of such deed.
2. ADMINISTRATOR'S SALE OF LAND—CONVEYANCE—CONSTRUCTION.
   A probate court, on petition of the administrators of a decedent, authorized the sale of two tracts of land and a portion of two adjoining tracts, also owned by the estate, "containing 16 acres, and making in all 150 acres." A sale was reported and confirmed in accordance with said order. Two deeds appeared of record, purporting to have been executed by the administrators on the same day to the purchaser, conveying the land sold. Each described the two full tracts and a fractional part of the adjoining tracts by metes and bounds, and each purported to convey 150 acres. But the description in the fractional part differed in the two; the one first recorded bounding a tract containing a little less than 16 acres, while the other included in such description only about 10 acres, making the entire quantity conveyed by that much short of the full 150 acres. *Held,* that the first deed, being the one which conformed to the orders of sale and of confirmation made by the court, and the declared intention of the parties as to quantity, must be given effect.

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Asheville.

For opinion below, see 76 Fed. 59.

Charles E. Jones and Alexander C. King (Walter B. Gwyn and R. L. Leatherwood, on the brief), for plaintiff in error.

James H. Merrimon (T. H. Cobb, on the brief), for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and PURNELL, District Judge.

SIMONTON, Circuit Judge. This case comes up by writ of error to the circuit court of the United States for the Western district of North Carolina. On October 13, 1892, the Nantahala Marble & Talc Company, a corporation of the state of West Virginia, filed its bill of complaint in the said circuit court for the Western district of North Carolina against W. S. Thomas and others, seeking an injunction against them for continuous trespass upon a tract of land valuable for its deposits of talc and marble, the property of complainant. The cause was heard November 15, 1892. The court, after argument, granted the injunction, but, it appearing that the title to the land was in controversy, it gave leave to the defendants to bring an action of ejectment, if they shall be so advised, to try the title to the land in controversy, and that for the purpose of such action the plaintiffs are ordered to accept service of the process, and admit possession of the land referred to in the bill of complaint. From this order the defendants appealed to this court, and the decision of the court below was affirmed. 7 C. C. A. 330, 58 Fed. 485. The cause having been remanded to the circuit court, the defendants, Thomas and others, with leave of the court, filed their cross bill, seeking to correct an

alleged mistake in a deed executed by the administrators of N. S. Jarrett, under the authority of the court of probate of Macon county, N. C., to the United States Soapstone Manufacturing Company, under whom defendants claimed title. These administrators had filed their petition in this probate court for leave to sell certain lands of Jarrett in aid of the personalty in liquidating the debts of the intestate. The lands which they desired to sell were thus described in the petition:

"Tract No. 34 in district No. 12, containing 64 acres; tract No. 33 in district No. 12, containing 70 acres; and also a part of two other tracts, Nos. ———, adjoining said tracts Nos. 33 and 34, containing 16 acres; making in all 150 acres."

The prayer of the petition was granted. The defendants (complainants in the cross bill) at that time claimed under a deed purporting to have been executed pursuant to the leave granted by the probate court. The deed conveyed the two tracts, Nos. 33 and 34, and then adds:

"Also a part of two tracts, Nos. 1,090 and 3,287, adjoining to No. 33 on the same side of said river [Nantahala], beginning on a lyn, corner of No. 33, and running S., 57 E., with a line of the same, eighty poles, to a spruce pine on the banks of said river, and corner of the said No. 33, same course, whole distance, 85 poles, to a stake, So. E. corner of No. 1,090, on the east side of said river; thence down said river, with the line of No. 1,090, forty poles, to a stake thereon, to the beginning on said lyn,—containing 16 acres; in all, 150 acres."

The mistake is alleged to be in this distance "forty poles to a stake." The area thus inclosed, instead of being 16 acres, is only 10⅓ acres; and the entire area, instead of being 150 acres, would be 139⅔ acres. The issues made by the cross bill having been heard, the cross bill was dismissed; the court deeming itself incompetent to review the proceedings of the probate court of Macon county. In dismissing the cross bill the court carefully limited its decision. Referring to the voluminous character of the testimony, which, in its opinion, in great measure did not bear upon the question under discussion, it states that question:

"Whether there was a mistake made in the decree, order, and action of the probate court of Macon county, or in the deed of conveyance made contemporaneous therewith, and, if there be such mistake, whether this court can correct it; and whether it creates an equity in the defendants which this court will establish and enforce."

Having thus stated the question, the opinion refers to other questions in the case:

"Whether the defendants have had possession and have exercised ownership upon the land in dispute. Whether complainants have had such possession and exercised such ownership. All evidence respecting the title. These are questions to be determined when the trial is had in its appropriate tribunal,—a court of law."

It is clear that the decision dismissing the cross bill cannot operate as res judicata of the case at bar. Much testimony was taken with regard to the matters contained in the cross bill. An order

was entered authorizing the use of this testimony in the action at law, provided for under the original bill, with a proviso that nothing therein contained shall prevent either party from introducing other competent testimony. The action at law was then brought; Thomas and others being the plaintiffs, and the Nantahala Company defendant. Issue was joined, and the cause was heard before a jury, each party exercising the privilege of putting in new testimony. All the testimony being in, after argument of counsel the presiding judge instructed the jury to bring in their verdict for the plaintiffs. Many exceptions were taken during the trial, and upon requests to instruct the jury and to the charge. The case is here on the assignments of error, accompanying the writ of error. These are 52 in all.

Taking upon them the burden of proof, the plaintiffs below show that they derive title from the administrators and heirs at law of N. S. Jarrett,—the same source of title as that under which the defendants below claim. In order to understand the case, some detail is necessary. N. S. Jarrett died seised of a large tract of land, of which the territory now in dispute was a part. He died intestate. In January, 1876, his administrators applied to the probate court of Macon county for leave to sell, in aid of the personalty, for the payment of debts, a tract of land, part of the Jarrett land (No. 33), containing 64 acres; also another tract (No. 34), containing 70 acres; and also a part of two other tracts (Nos. ——, ——), adjoining the same and containing 16 acres; making in all 150 acres. The prayer of the petition was granted, and the petitioners had leave to sell at public or private sale. On February 10, 1876, the administrators filed their report in the probate court, stating that on that day they had sold the lands mentioned in the petition to the United States Soapstone Manufacturing Company for $2,700. The court confirmed the sale, and ordered the administrators to make title in fee simple to the purchaser. There appear on the record two deeds, each purporting to have been made by the administrators of Jarrett; each reciting this order of the probate court, the sale thereunder on 10th February, 1876, the confirmation of the sale on its report to that court, and the direction and authority to make conveyance in fee to the United States Soapstone Manufacturing Company, the purchaser. Both deeds bear date the same day, and both are recorded in the same book. Both the deeds describe, among the property conveyed, tract No. 33, containing 64 acres, and tract No. 34, containing 70 acres. Both deeds convey a part of two other tracts,—Nos. 1,090 and 3,287. They differ at this point, and so this controversy arises. One of these deeds, recorded at pages 322 et seq. of record of deeds, has this description:

"Also a part of two other tracts, Nos. 1,090 and 3,287, joining to tract No. 33, beginning on a lyn, the N. W. corner of No. 33, and runs S., 57 E., with the line of same, eighty-five poles, passing a spruce pine, corner of No. 33, to a stake, corner of No. 3,287: then S., 25° E.. twelve poles, to a stake, S. E. corner of No. 1,090; then down the river with its meanders to a stake; then N., 85° W., one hundred and two poles, to the beginning of said lyn corner, so as to make sixteen acres, and containing in the aggregate one hundred and fifty acres."

The other deed is recorded at pages 325 et seq. of the same book, and probably follows next after the above deed. Its description is as follows, after describing Nos. 33 and 34:

"Also a part of two tracts, No. 1,090 and No. 3,287, adjoining to No. 33 on the same side of the river, beginning on a lyn, N. W. corner of No. 33, and running S., 57 E., with the line of the same eighty, to a spruce pine on the bank of said river, and corner of the same No. 33, same course, whole distance eighty-five poles, to a stake, S. E. corner of No. 1,090, on the east side of said river; thence down said river with the line of No. 1,090 forty poles, to a stake; thence to the beginning of said lyn, sixteen acres; containing in all one hundred and fifty acres."

The general description of the tract in both deeds is the same; the area it was to contain is the same, 16 acres; and the aggregate of this tract, with the two other tracts, is the same, 150 acres. The difference between them is that the deed last recorded has for the line from the stake at S. E. corner of 1,090 "forty poles, to a stake; thence to the beginning on said lyn." The deed first recorded has for the same line, "then down the river with its meanders to a stake; then N., 85° W., 102 poles, to the beginning of said lyn, so as to make 16 acres." If the line "forty poles, to a stake" be adopted, then the area of the last-described tract, instead of being 16 acres, would be 10½ acres, reducing the proposed area of 150 acres to 139⅔ acres. If the description in the deed first recorded be adopted, the area would be a little less than 16 acres. On the same day, 17th February, 1876, A. P. Monday and others, heirs at law of Jarrett, executed a deed to the United States Soapstone Manufacturing Company of this land, described as in the last recorded deed, and containing, as it does, the "40 poles, to a stake," recorded in the same book, March 1, 1876, in the pages next succeeding the record of that deed.

On the margin of the deed first recorded are these words:

"This record is void, deeds for the within-described lands having been duly executed to the United States Soapstone Manufacturing Company, of Cincinnati, by the same parties [naming them], and the same are duly registered in this book (see pages 325, 326, 327, 328, and 329), March 1, 1876."

When this was offered in evidence, it was not admitted by the court. The ruling was excepted to. There was no error in the exclusion of this testimony. Nor could this memorandum operate as defeasance of the deed opposite to which it was made. The probate court had approved of it, and had ordered it to be registered; it being a genuine deed. The register had no business with it, but to record it. He could not defeat the deed. He was no party to it. Nor could the parties make defeasance of the deed, except by deed. The plaintiffs below, W. S. Thomas and others, hold under the United States Soapstone Manufacturing Company, by sundry mesne conveyances, through many parties. Each deed in this chain describes the land in the same way as that last recorded; that is to say, having the 40-pole line in it. It was this alleged mistake that the cross bill sought to correct. The deed first recorded was probably not known when the cross bill was filed. It certainly was not produced. Now W. S. Thomas and the other plaintiffs below set up that first recorded deed and claim under it. Right here is the gist of this case. The

Nantahala Marble & Talc Company hold other lands formerly belong ing to Jarrett, and sold by his administrators under similar proceed ings to those under which the soapstone company got its lands. The same reservation appears in all the mesne conveyances which is used in the deed of the administrators, to wit, after describing in full many tracts of land (31 in all), it says:

"While this deed contains fifty-five hundred and twenty and a half acres of land, it is only intended to convey fifty-three hundred acres, as the other two hundred and twenty and a half acres have been heretofore conveyed to the United States Soapstone Company and one Matthew Cole."

Seventy acres had been conveyed to Cole.

So in another deed in the record:

"The foregoing 41 several described tracts or parcels of land, containing in the aggregate 8,347½ acres, more or less; but this deed is intended to convey only 7,972½ acres in fee simple, as 375 acres has heretofore been sold and conveyed as follows: 70 acres on the east side of Nantahala river, conveyed by the heirs and administrators of N. S. Jarrett, deceased, to Matthew Cole, upon which he now resides, and 150 acres conveyed by said administrators of said Jarrett, deceased, to the U. S. Soapstone Company, and being the same land now leased and operated by Rickard and Hewitt," etc.

So the question is, how much land was conveyed to the United States Soapstone Company? Which deed is of force,—the one first recorded, or the second? The trial judge held that the first deed controls the title, and so instructed the jury. Was this error? The administrators had no estate in this land. The only authority they had to sell it was derived from the decree of the court of probate, and from that alone. The order and decree of the court of probate fixes, therefore, as well the authority to sell, as the amount of land to be sold. This decree ordered a sale of 150 acres of land, and, when the sale to the United States Soapstone Manufacturing Company was reported, confirmed this sale, the title of the purchaser to 150 acres, and its right to a deed for this amount was fixed. As the administrators were acting solely under and by the authority of the court, they could do neither more nor less than the court permitted them to do. They could not sell or convey more than 150 acres. Shriver v. Lynn, 2 How. 43, 11 L. Ed. 172. And they could not convey less than 150 acres. The deed first recorded conveyed 150 acres. The second deed did not. The first carried into effect the true meaning and intent of the decree. The second did not. Then the first deed must stand. It is evident that, when the property thus conveyed was subsequently sold and conveyed, the intent and purpose of each conveyance was to convey the identical land sold by the administrators of Jarrett under the order of the court of probate, and afterwards conveyed by their deed. That was the prime intent of each deed. In the construction of deeds the first rule is that the intention of the parties is, if possible, to be supported. The second rule is that this intent is to be ascertained from all parts of the deed, taken altogether. Dismukes v. Wright, 20 N. C. 206. In White v. Luning, 93 U. S. 523, 23 L. Ed. 938, the supreme court of the United States discusses a question very like this. The decision shows that the intent of the parties controls to such an extent that even the principles governing ordinary actions of ejectment are made to

yield to it. This certainly is the rule when applied to the proceedings of a judicial sale, and when a strict adherence to the general rule will defeat the intent. The court says:

"The policy of the law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor, so as to secure, if it can be done consistently with legal rules, the object they were intended to accomplish. Is this deed void for uncertainty of description, or can the property intended to be conveyed be reasonably located by that description? The court below located it by adopting, except in one instance, the calls for courses and distances, and rejecting as false and repugnant certain calls for known objects. It is true that, as a general rule, monuments, natural or artificial, referred to in a deed, control on its construction, rather than courses and distances. But the rule is not inflexible. It yields whenever, taking all the particulars of the deed together, it would be absurd to apply it. For instance, if the rejection of a call for a monument would reconcile other parts of the description, and leave enough to identify and render certain the land which the sheriff intended to convey, it would certainly be absurd to retain the false call, and thus defeat the conveyance."

The whole intent and purpose of these proceedings in the court of probate, and of the deeds made after it, was to sell and convey a tract of 150 acres, made up of two tracts, and of sixteen acres carved out of two other tracts; and that intent remains down to the present claimants, Thomas and his associates.

There is another point of view from which this case may be considered. The Nantahala Company, claiming to be the owner of the small parcel of land in controversy, filed its bill for an injunction against Thomas and his associates because of their trespass upon and occupation of its land. The title of the Nantahala Company was denied. The bill could not lie if it had no title. An action at law was ordered, to decide this question. For reasons perfectly satisfactory to the learned judge before whom the case was heard, he ordered that an action of ejectment be brought, and that Thomas and his associates should be actors therein. If this action at law is governed by the rule applicable in similar cases, and Thomas and his associates be compelled to prove title as against the world, the loss of their case would show that they had no title, but it would not prove title in the Nantahala Company; for non constat that there is not an outstanding title paramount to both of them. Yet, in order to sustain the bill for an injunction brought by the Nantahala Company, it must be shown that they had title, or at the least the right of possession. Be this as it may; the record shows that the Nantahala Company holds its land under a series of mesne conveyances expressly excepting, not the lands conveyed to the United States Soapstone Manufacturing Company in general terms, but the 150 acres conveyed to that company. So, in weighing the merits of the parties, we must begin by assuming as fixed that there were 150 acres conveyed to the soapstone company, and that cannot be the case unless the deed first recorded is the true and valid deed.

There is still another point of view. The administrators and heirs at law of Jarrett sold to those under whom the Nantahala Company claims a large tract of land, exempting from said conveyance 150 acres sold to the United States Soapstone Company. Admit, for the

sake of argument, that these administrators and heirs at law conveyed to the soapstone company only the land covered by the deed recorded second, and so only conveyed them 10½ acres instead of 16. The legal title in the remaining 5⅔ acres, the land now in controversy, remained in these heirs at law. But by deed dated September 5, 1892, these same administrators and heirs at law conveyed the whole tract of 16 acres, with proper boundaries, to Thomas and his associates. This conveyance may not avail for the 10½ acres, but it certainly must be good as to the remainder of the 16 acres, upon the hypothesis suggested.

It is unnecessary to go into a minute examination of the numerous assignments of error. The verdict was substantially right, and we see no error in the trial of the cause below. The judgment of the circuit court is affirmed.