TEXAS PACIFIC COAL & OIL CO. et al. v. HOWARD et al.  (No. 9161.)

(Court of Civil Appeals of Texas. Ft. Worth. April 19, 1919.)

1. MINES AND MINERALS ⬤48—OIL—"MINERAL."

Oil produced from wells is a "mineral" substance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

2. INJUNCTION ⬤163(2) — TEMPORARY INJUNCTION — DISSOLUTION — DISPUTE AS TO RIGHTS—DRILLING OIL WELLS.

In a suit by the lessee of an oil and gas lease to restrain the purchaser of a part of the land omitted from the lease by mutual mistake from drilling an oil well, it was not an abuse of discretion to dissolve a temporary injunction, where litigation as to the title of the omitted land was pending on conflicting evidence; and irreparable injury might result to defendant by wells drilled on adjacent land by petitioner.

3. INJUNCTION ⬤137(4) — TEMPORARY INJUNCTION—DRILLING OIL WELLS—PROPRIETY OF REMEDY—DOUBT AS TO RIGHTS.

In a suit by the lessee of an oil and gas lease against the purchaser of a part of the land omitted by mutual mistake from the lease, to restrain him from drilling for oil, a temporary writ of injunction was not appropriate, it appearing that the rival claimants were acting in good faith, that their ultimate rights were uncertain, and that the interest of the public at large, arising from an early development of the region for oil, was at stake.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Suit by the Texas Pacific Coal & Oil Company and others against W. Howard and others for an injunction. From an order dissolving a temporary injunction, petitioners appeal. Affirmed.

W. J. Oxford, of Thurber, Scott & Brelsford, of Eastland, and Vinson, Elkins & Wood, of Houston, for appellants.

Earl Conner, of Eastland, Ritchie & Ranspot, of Mineral Wells, and Kay, Akin & Weldon, of Wichita Falls, for appellees.

CONNER, C. J. This appeal is from an order of the district court of Eastland county, dissolving a temporary writ of injunction theretofore issued upon the petition of the appellants.

This suit was filed on January 23, 1919, by the Texas Pacific Coal & Oil Company, which for brevity will hereafter be termed the Coal Company, and by the Prairie Oil & Gas Company, hereinafter designated as the Oil Company, against W. Howard, W. E. Jones, George J. Watson, R. D. Hinkson and others, on allegations to the effect that on March 10, 1917, said W. Howard entered into a contract with said Coal Company, whereby the company was given the exclusive right to explore for oil and gas on 160 acres of land constituting the W. Howard homestead tract in Eastland county. The said contract was in writing, but failed to correctly describe the land so leased, and that to correct the insufficient description said Howard, in October, 1917, executed a corrected lease of his said homestead; that as a matter of fact neither the original nor the corrected lease included a 1-acre tract of land out of the Mark Haley survey now claimed by the defendants; that the said 1 acre joined the other lands of the homestead tract and formed part thereof, but in writing the leases it had been omitted by mutual mistake of all parties thereto.

The plaintiffs further alleged that some time later than the transactions above referred to, to wit, on October 26, 1917, the defendant Jones, acting for himself and other defendants, purchased from Howard all of the land forming and constituting the W. Howard homestead tract, including the 1 acre above referred to; that at the time of said purchase the said Jones and other defendants well knew that the leases from Howard to the Coal Company were intended to include the 1 acre, and that it had been omitted from said leases by the mutual mistake of the parties; but that, notwithstanding such information and knowledge, they caused Howard to execute to them conveyances of the entire homestead tract, which conveyances, it was averred, were subject to the prior leasehold right of the plaintiffs in action.

It was further alleged that defendants are asserting title to the said 1 acre of land, and are attempting to develop the same for oil and gas in violation of the rights of the plaintiffs; that such tract is within proven oil territory, and is very valuable; that great quantities of oil can be produced therefrom; and that, unless said defendants are restrained from further operations thereon, the plaintiffs will suffer irreparable injury and damage.

Upon presentation of plaintiffs' petition, Hon. Joe Burkett, judge of the district court of Eastland county, duly entered an order, commanding the issuance of a temporary writ of injunction as prayed for upon the plaintiffs giving good and sufficient bond in the sum of $5,000.

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The writ ordered was duly issued, and thereafter, on February 8, 1919, the defendants Jones and others filed their motion to dissolve, alleging, among other things, that they were the owners of said 1 acre, having purchased the same for a valuable consideration; that mention of this 1-acre tract was not made in the leases under which the plaintiffs claim, and denying any mistake in its omission from the plaintiffs' leases, and especially denying the mutual mistake alleged, and especially denying notice of any such mistake. The defendants further averred that they had, at great expense, purchased a standard rig, machinery, and tools, and had drilled a well for oil and gas on said 1-acre tract to a depth of 3,300 feet, and were still engaged in the prosecution of said well; that the 1-acre tract is located in the proven oil field of Eastland county, and that said well and improvements would greatly deteriorate if required to stand and remain idle; and, finally, they averred their readiness and ability to make bond in favor of the plaintiffs in any sum required by the court, conditioned that in the event of final recovery by the plaintiffs the value of the minerals extracted should be paid to them.

Upon the hearing of the motion, the court entered an order dissolving the temporary writ of injunction, but continued it in force pending the appeal, upon plaintiffs giving bond in the sum of $50,000. The bond was filed in due time by the plaintiffs, and they have duly appealed from said order of dissolution.

In general terms it may be said that the evidence of the parties submitted on the motion to dissolve was in substantial accord with their respective allegations. More particularly it was shown that Howard's homestead tract was composed of four separate parcels of land. The 1 acre in controversy is one of the parcels constituting the whole, but it was acquired by Howard by a separate conveyance. Mr. Howard testified quite definitely to the effect that it was the purpose of all parties thereto to include his entire homestead tract in both the original lease of March 10, 1917, and in the subsequent corrected lease of October, 1917, and that the 1 acre of land in controversy had been omitted from both leases by mistake. His testimony and other evidence also tends strongly to show that appellees, before their purchase of the fee in the Howard homestead, had notice of the alleged fact that the 1-acre parcel had been leased together with the other parcels to the Coal Company, and that it had, through oversight or mistake, been omitted from the leases.

Upon the facts so stated, appellants insist that they are entitled, as a matter of law, to have appellees enjoined from a further prosecution of the oil well, begun and drilled, as by them alleged, until, at least, it shall be otherwise determined, on final hearing. Appellants' contentions are thus stated, in the several propositions they present:

"(1) Where the facts show threatened acts which, if not prevented, will result in irreparable injury, or where it appears that such acts are in their character and tendency destructive to the inheritance or to that which gives it its chief value, an injunction will lie, notwithstanding a dispute, or even pending litigation, as to title.

"(2) The drilling of an oil well on oil land, and the threatened appropriation of the oil produced therefrom, constitutes irreparable injury, and an injunction will lie restraining such action, notwithstanding a dispute, or even pending litigation, as to title.

"(3) Where the title to oil property is in litigation, an injunction will lie to enjoin persons in possession from drilling oil wells thereon and extracting the oil therefrom; for such action is emphatically the taking away of the entire substance of the estate, and besides, there is in such a case no mode of estimating the injury that will ever approach substantial accuracy.

"(4) While a legal action is pending and being prosecuted in good faith for title to and possession of property, neither party will be permitted to destroy the property's value by appropriating to himself that which makes it valuable, and in such a situation equity, not being immediately concerned with the superiority of the rival claims, does not wait upon the adjudication of the question, but will restrain any action which in the end would make the property valueless in the hands of the successful claimant.

"(5) The evidence showing that the property in controversy was chiefly valuable as oil property, and that the defendants were drilling an oil well thereon, and were threatening to reduce to possession the oil and minerals thereunder, and the evidence further showing that the plaintiffs made a prima facie showing of title on the hearing to dissolve the injunction theretofore granted, the court erred in dissolving the injunction, notwithstanding there was pending litigation as to the title.

"(6) The drilling of an oil well and the threatened appropriation of the oil produced therefrom constitute irreparable injury, and a statement of such injury is sufficient in a bill for an injunction without allegations of insolvency. This being true, the willingness of defendants to execute a bond for the protection of appellants was no answer to the bill, and therefore the court erred in dissolving the injunction.

"(7) The right to an injunction is based upon the nature of the injury, and not upon the capacity of the parties to respond in damages.

"(8) A bill which alleges that the defendants are about to drill for and take oil from the premises alleged facts which per se constitute irreparable injury."

The following article and cases are cited in support of the foregoing propositions:

"Article 4643, Vernon's Sayles'. Tex. Civ. Stats.; Houston Oil Co. v. Village Mills, 202 S. W. 725; Houston Oil Co. v. Davis, 154 S.

W. 337; Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Southwestern Tel. & Tel. Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1052; Erhardt v. Boaro et al., 113 U. S. 537, 5 Sup. Ct. 565, 28 L. Ed. 1116; Thomas v. Marble & Talcum Co., 58 Fed. 488, 7 C. C. A. 330; Bettman v. Harness, 42 .W. Va. 433, 26 S. E. 271, 36 L. R. A. 566; Dudley v. Hurst, 1 Am. St. Rep. 376; Mobile Co. v. Knapp (Ala.) 75 So. 881; Merced Mining Co. v. Fremont, 7 Cal. 317, 68 Am. Dec. 262."

The article of the statute cited provides that writs of injunction may issue, not only where applicant may show himself entitled thereto under the principles of equity, but also:

"(1) Where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant.

"(2) Where, pending litigation it shall be made to appear that a party doing some act respecting the subject of litigation, or threatens or is about to do some act, or is procuring or suffering the same to be done in violation of the rights of the applicant, which act would tend to render judgment ineffectual."

And as construed in a number of our cases, notably in Sumner v. Crawford, supra, the statute has enlarged the remedy of injunction in this state to all cases falling within clauses 1 and 2 above quoted, regardless of whether the defendant was insolvent, or whether the applicant for the writ had a legal remedy by a suit for damages or otherwise. In equity, generally speaking, the fact that the defendant was solvent, and that the applicant had a legal remedy by way of a suit for damages or in some other way, was sufficient to authorize a refusal of the writ of injunction. We have, however, arrived at our final conclusion, attached no importance to the distinction noted between our statute as construed and the principles of equity relating to the subject of injunctions, for while it was alleged and shown that the defendants in this case were solvent and able to respond in damages, even in equity the writ of injunction is deemed an available and proper remedy where, as is alleged here, it would be difficult to ascertain the amount of damages with certainty, or where the threatened injury would be irreparable or goes to the destruction of the property or thing in controversy. Thus in Sumner v. Crawford, supra, it was held that a mandatory injunction was proper to compel the restoration of certain goods unlawfully seized which were necessary to an effectual and profitable disposition of the remainder of the general stock. The case of Dudley v. Hurst, supra, is similar in principle to the case of Sumner v. Crawford. There it was held proper to enjoin, pending litigation, the removal of certain machinery that had become a fixture to the soil. So that at last

212 S!W.—47

the vital question is not so much whether the right to an injunction in this case is one given by our statute as whether the threatened injury is one to be classed as irreparable. If it is then, both by the statute and in equity, injunctive relief is generally available, provided the relief to which appellants show themselves entitled requires the restraint of some act prejudicial to them, or that would render the final judgment ineffectual.

Of the cases cited by appellants, the cases of Houston Oil Co. v. Village Mills, 202 S. W. 725, and Southwestern Tel. & Tel. Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1052, involved a threatened removal of standing timber and shade trees. The cases of Erhardt v. Boaro et al., by the Supreme Court of the United States, 113 U. S. 537, 5 Sup. Ct. 565, 28 L. Ed. 1116, Thomas v. Marble & Talcum Co., 58 Fed. 488, 7 C. C. A. 330, Merced Mining Co. v. Fremont, 7 Cal. 317, 68 Am. Dec. 262, are cases that involve a threatened removal of such minerals as gold, marble, or talc. All of these cases hold that the threatened acts would constitute irreparable injury, and that to restrain their performance a temporary writ of injunction was required in order to maintain the status quo until a final determination of the conflicting claims of the litigants.

[1] Oil is a mineral substance, and its removal would greatly impair the value of the land in controversy, which, as alleged and shown, is chiefly valuable for the oil, and the principle of the cases above mentioned was, in fact, applied in a case similar to this by the West Virginia Supreme Court of Appeals. See Bettman v. Harness, supra.

We are thus brought squarely up to the question whether the order dissolving the temporary writ of injunction theretofore issued in this case and the consequent denial of appellants for temporary relief by injunction constitutes error for which the judgment appealed from must be reversed. We have concluded that we must, for reasons hereinafter briefly stated, answer the question in the negative.

In arriving at the conclusion announced, we have not been influenced by the thought that the extraction of the oil, if any, under the land in controversy, would not destroy its chief value, nor yet because of any supposed want of power in the court. But the mere fact that injury is threatened does not in all cases entitle a complainant to injunctive relief. Nor does the mere existence of the court's power to grant such relief compel the issuance of the writ.

The right or power to issue the writ is one question. Whether such power shall be exercised in a given case is an altogether different one. While under our amended statute and the construction thereof by our Supreme Court relief by a writ of injunction is more freely available and less hedged

about by restrictions than formerly, the nature or character of the writ or remedy has not been changed. The writ as ever is a harsh one and peremptory. By means thereof the real owner may be denied the possession and use of his property at the instance of an adverse claimant in advance of an adjudication of the conflicting assertions of right. Hence it was and is under the general equity practice largely within the discretion of the court as to whether the writ of injunction should issue in advance of an ultimate determination of right. Thus it is said in 22 Cyc. p. 746:

"An injunction, whether temporary or permanent, cannot, as a general rule, be sought as a matter of right, but its granting or refusal rests in the sound discretion of the court under the circumstances of the particular case. Especially is this the rule in the case of a temporary injunction, where the granting of the injunction depends upon the determination of questions of fact and the evidence is conflicting."

Again, the author in Ruling Case Law, vol. 14, p. 307, says:

"The remedy by injunction is summary, peculiar, and extraordinary, and ought not to be issued except for the prevention of great and irreparable mischief. It is not ex debito justiciæ for any injury threatened or done to the estate or rights of a person, but the granting of it must always rest in the exercise of a sound discretion, governed by the nature of the case."

[2] We have not felt ourselves able to say, under the existing circumstances of this case, that the trial court abused a sound discretion in dissolving the temporary writ of injunction. It may be admitted that the 1 acre of land involved in this suit was omitted by mutual mistake from valid leases under which appellants claim, but it needs neither argument nor authority for the proposition that appellants must fail if defendants purchased for a valuable consideration and without notice of the mistake, as they allege and adduced evidence to show. The defendants also alleged and offered evidence to the effect that after they had contracted to purchase the Howard homestead it was discovered from the opinion of the attorney who passed upon the abstract of title that the 1 acre in question was not covered by the oil leases mentioned, and they, appellees, thereafter sought out authorized officers of the appellant Oil Company (which had by purchase acquired a one-half interest in the leases of the Coal Company) and was by them assured that the 1 acre was not included in such leases, after all of which they purchased the machinery, pipes, etc., necessary for drilling a well before appellants gave any notice of the alleged mistake. We have no means of determining the weight the trial court gave to the evidence in support of these defensive allegations. He may have

been thereby impressed with a very strong doubt of appellants' final success in the suit and with a probability of the good faith and possible superiority of appellees' claim, and hence concluded that defendants ought not, under the circumstances, be further restrained. It was alleged and shown that before the application for the writ of injunction the defendants had drilled upon the land in controversy a well some 3,300 feet, and expended in the operation some $35,000. A continuance of the injunction, of course, arrests any further action on their part. Thereby they are forbidden from even entering onto the premises mentioned and from in any way or manner interfering with the plaintiffs in their entry thereon.

The appellees alleged, and there is nothing pointed out which indicates that the allegation is not true, that a cessation of the drilling, and abandonment of the well during the intermediate period of the further litigation would very greatly damage the well, machinery, etc. Under the operation of the writ, appellees could not even enter upon the land for the purpose of protecting the well or machinery so that great damage, not easily ascertainable, might result to them from a continuance of the injunction. In discussing the subject of the temporary injunction it is said that the right asserted by the claimant must be clear and free from doubt, where the effect of the preliminary injunction will be more than merely a continuance of the status quo, or where the injunction will cause defendants greater loss and inconvenience than that which will be suffered by the complainant in the absence of an injunction. 22 Cyc. p. 753.

If it be assumed, therefore, as it seems to us we must assume from this order, that the trial court was, from the evidence, left in doubt as to the result of a final trial of the conflicting claims, it was not an abuse of discretion on his part, to dissolve the injunction. For should it so happen that the appellees finally succeed in establishing the right to the acre of land in controversy, the damage to them might indeed be irreparable. The record shows that the appellants owned leased lands adjacent to the acre in question and nothing is here presented that would preclude them from drilling an adjacent well or wells and thereby exhaust the oil from the subject-matter of this suit. Should such a course be pursued it would be extremely difficult, if not impossible, for appellees to show the amount of their damage, if any, for, while much is unknown upon the subject, it is the generally accepted theory that oil, unlike gold and silver and other minerals in place, is transitory—flowing from one place under the surface of the earth to another—and that it can be definitely known whether oil is under a given spot only by drilling.

[3] Indeed, in our judgment, a temporary

writ of injunction is inappropriate under circumstances such as are exhibited in this case. Of course, it is not to be doubted that under the authorities an owner of land or of a leasehold interest would be entitled to and should receive injunctive relief as against a mere trespasser or wrongdoer. But in cases where, as indicated here, the rival complainants are acting in good faith, and where the ultimate right seems uncertain, other protective remedies would seem to be much more appropriate. It is not only in the interest of both parties, but it may be said to be also in the interest of the public at large that there shall be an early development of the oil in the section. All classes of correlated interests are thereby stimulated, and such considerations alone are deemed by the North Carolina courts sufficient to require the refusal of temporary injunctions against a threatened removal of minerals in place, such as gold, iron, etc. See Mining Co. v. Fox, 39 N. C. 61; Falls v. McAfee, 24 N. C. 236; Parker v. Parker, 82 N. C. 165. For additional reasons we think the rule should be applied in this case.

As it seems to us, notwithstanding the decision of the West Virginia court, a distinction is to be made between cases of minerals in place such as are involved in most of the cases herein cited by appellants and minerals of a fugitive character, as oil. For, in the class of cases first mentioned, it is certain that the minerals have a fixed place in the soil, and that they will there remain forever unless removed. In such case a temporary writ of injunction will clearly and effectively preserve the status quo, the principal object and functions of such writ, until the final determination and judicial designation of the true owner to whom the court will then be able to restore the property in its original form and with all of its natural and valuable qualities. But it cannot be so said as to fugitive substances beneath the soil. Our present knowledge is to the effect that its presence or location in any designated place is not fixed and certain; that oil that is under one person's land to-day may be beneath the land of another to-morrow; and to illustrate that A. may withdraw the oil from under the land of B. should A. be accorded the right of drilling adjacent wells on his own land. In such case, a temporary restraint of B. does not, as to him, preserve the status quo. On the contrary, such restraint may result in irreparable injury to or destruction of his own property. It may be suggested that in such case both A. and B. can be restrained until a final determination of their conflicting claims, but nothing presented in this record will justify us in fixing the distance that a flowing well will withdraw oil from adjoining lands, and it cannot be said that the court in endeavoring to settle and preserve the rights of a given tract of land should arrest all development in the locality by enjoining all owners of adjacent lands, regardless of their want of interest in the particular suit.

It may also be said that should appellees succeed in finally establishing their right to the 1 acre of land in controversy, and it thus be made to appear that the temporary writ of injunction in this case was wrongfully issued, they would then have a remedy for damages in an action on the injunction bond. But this, unless all learning on the subject be at fault, would involve great uncertainty and as a remedy would be inadequate. Appellees in such case could, of course, recover for any loss or deterioration, if any, of their visible property, such as their rig and drilling machinery. But to recover for loss of oil they would be required to prove that oil, in fact, existed under the land, and that they could and would have secured it had they not been wrongfully prevented. This fact it would doubtless be impossible to determine with · certainty without an actual drilling test, and should such test be made and no oil found, it could not with certainty be said that oil did not there exist at the time of the issuance of the temporary writ of injunction. Nor in case of a drilling test and oil thereby be found could it be with certainty determined just how much of the original quantity may have been withdrawn by producing wells in adjacent territory. Should a continuation of appellees' well demonstrate the fact that no oil exists under the 1 acre in controversy, the subject-matter of the litigation will apparently be of little further interest to either of the parties. In that event it would be shown that appellants have lost nothing of any considerable value, appellees being the only sufferers. Should oil be produced, however, the court may protect the rights of the true owners, as finally established, by a receivership or by some other equitable procedure. So that it was not imperative on the part of the trial court that he should find that the threatened acts of appellees either required restraint or would render the final judgment ineffectual within the meaning of our statute.

We therefore conclude, on the whole, that the judgment should be affirmed.