TRI–STAR PETROLEUM COMPANY, Appellant,

v.

TIPPERARY CORPORATION, Tipperary Oil & Gas Corporation, and Tipperary Oil & Gas (Australia), Pty Ltd., Appellees.

No. 08–02–00107–CV.

Court of Appeals of Texas, El Paso.

Jan. 31, 2003.

---

Steven C. Kiser, Lynch, Chappell & Alsup, Midland, for Appellant.

Charles Tighe, Cotton, Bledsoe, Tighe & Dawson, Midland, for Appellees.

Leslie G. McLaughlin, for Butlers.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice

This is an accelerated, interlocutory appeal from a temporary injunction order that requires Appellant, Tri–Star Petroleum Company ("Tri–Star"), to relinquish operations and cease acting as Operator of the Comet Ridge Project and prohibits Tri–Star from interfering with Appellees' assumption of control and operation of the Project. A party may appeal from a trial court's interlocutory order granting a temporary injunction or overruling a motion to dissolve a temporary injunction. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 51.014(a)(4)(Vernon Supp.2003).

In nine issues for review, Tri–Star argues that the trial court erred and abused its discretion by: (1) Signing and entering the temporary injunction; and by granting a temporary injunction that; (2) alters the status quo; (3) does not make a judicial determination that Tri–Star failed or refused to carry out its duties; (4) is an advanced ruling on the merits; (5) relies on evidence which is subject to binding arbitration and was outside the court's purview; (6) fails to apply the proper standards for removal; (7) is effectively a mandatory injunction where there is no extreme hardship or special circumstances; (8) is without evidence or no factually sufficient evidence that Appellees will suffer irreparable injury in the interim or that there is no adequate remedy at law; and (9) does not make a judicial determination that Tipperary would be a better operator than Tri–Star. We affirm.

## PROCEDURAL BACKGROUND

Appellant Tri–Star and Appellees Tipperary Corp., Tipperary Oil & Gas Corp., Tipperary Oil & Gas (Australia) Pty Ltd. (collectively "Tipperary") are parties to a Joint Operating Agreement ("JOA") which governs the development of a large natural gas project, the Comet Ridge Project, located in Queensland, Australia. The JOA dated May 15, 1992, designated Tri–Star as the Operator of the Project and Tipperary as one of the non-operating working interest owners. On August 6, 1998, Tipperary filed the underlying suit against Tri–Star seeking money damages for alleged mismanagement of the Project by Tri–Star and a declaration that Tri–Star has breached the JOA, has failed to operate in a good and workmanlike manner, and that cause exists to remove Tri–Star as Operator. In January 1999, a majority of non-operators affirmatively voted to remove Tri–Star as Operator and selected Tipperary as successor Operator. In November 2000, the non-operating working interest owners again affirmatively voted to remove Tri–Star as Operator and to replace Tri–Star with Tipperary. On May 1, 2000, Tipperary filed an amended original petition which alleges that Tri–Star breached its contractual obligations under the JOA by refusing to step down as Oper-

ator after the affirmative vote for removal and the selection of Tipperary as successor. On November 27, 2000, Appellees filed an application for a temporary injunction seeking removal of Tri–Star as Operator. On November 13, 2001, Tipperary filed an amended verified application for a temporary injunction regarding removal of Tri–Star Petroleum Company as Operator.

After a seven-day hearing, the trial court granted a temporary injunction in favor of Tipperary, finding that Tipperary had established a probable right of recovery, probable injury in the interim, and no adequate remedy at law. Specifically, the temporary injunction order in pertinent part finds that Tipperary is the current lawful operator by vote of the majority in interest under the terms of the JOA, that Tri–Star is prohibited from interfering with Tipperary's assumption of control and operation of the Project, and that Tri–Star shall relinquish operations, and cease acting as Operator of the Project. Tri–Star now brings this accelerated interlocutory appeal, challenging the trial court's temporary injunction order.

## DISCUSSION

### Standard of Review

■ The decision to grant or deny the temporary injunction lies within the sound discretion of the trial court. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993). In an appeal from an order granting a temporary injunction, our review is confined to the validity of that order. *Id.; Universal Health Services, Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex.App.-Austin 2000, no pet.). Abuse of discretion arises when the trial court misapplies the law to the established facts of the case or when it concludes that the movant has demonstrated a probable injury or a probable right to recovery and the conclusion is not reasonably supported by the evidence. *See State*

*v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975); *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978); *Universal Health Servs., Inc.*, 24 S.W.3d at 576. We may neither substitute our judgment for that of the trial court nor resolve the merits of the underlying case. *See Davis*, 571 S.W.2d at 861–62; *Universal Health Servs., Inc.*, 24 S.W.3d at 576. Rather, we view the evidence in light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order is so arbitrary as to exceed the bounds of reasonable discretion. *See Universal Health Servs., Inc.*, 24 S.W.3d at 576. Where there are no findings of fact or conclusions of law, as here, we will uphold the trial court's judgment on any legal theory supported by the record. *Davis*, 571 S.W.2d at 862. We cannot reverse a trial court's order if the trial court was presented with conflicting evidence and the record includes evidence that reasonably supports the trial court's decision. *Id.* Consequently, a decision based on conflicting evidence does not constitute an abuse of discretion. *Id.*

### The Injunctive Relief Inquiry

■ At a temporary injunction hearing, the only issue before the trial court is whether the applicant is entitled to preservation of the status quo pending a trial on the merits. *Walling*, 863 S.W.2d at 58. The applicant need only show a probable right to recovery and a probable injury if temporary equitable relief is denied; the applicant is not required to establish that he will finally prevail in the litigation. *See Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968).

### Preservation of the Status Quo

■ In deciding whether to grant a temporary injunction, the trial court must ascertain whether the applicant is entitled

to preservation of the status quo. *Walling*, 863 S.W.2d at 58. The status quo is defined as the last, actual, peaceable, non-contested status that preceded the controversy. *Southwestern Bell Tel. Co.*, 526 S.W.2d at 528.

In its Issue Two, Tri–Star contends that the trial court abused its discretion because the order allegedly alters the status quo between the parties pending a trial on the merits. Tri–Star asserts that the controversy did not begin with Tri–Star's refusal to comply with the vote to remove it as Operator. Rather, the last peaceable non-contested status is Tri–Star as Operator, the position it held prior to August 6, 1998 when Tipperary filed its lawsuit. In its original petition, Tipperary included a request for the trial court to declare that cause exists to remove Tri–Star as operator of the Comet Ridge Project. Tri–Star argues that the vote to remove Tri–Star as Operator occurred after the 1998 filing of this suit and thus, cannot establish the status quo.

It is undisputed that Tri–Star was the Operator under the JOA when this lawsuit was originally filed. However, Tri–Star's argument regarding the status quo relies on a broad interpretation of "the controversy" between the parties. In its original petition, Tipperary complained that Tri–Star had breached several provisions of the JOA, including allegations that Tri–Star had failed to conduct operations in a good and workmanlike manner, committed several breaches of contract, and had failed and refused to carry out its duties under the JOA. In January 1999 and again in November 2000, non-operator working interest owners exercised their right to vote under the JOA for removal of the Operator and selection of a successor. After the January 1999 vote, Tipperary filed an amended original petition on May 1, 2000, which included subsequent allega-

tions against Tri–Star *inter alia* a request for injunctive relief to require Tri–Star to comply with the majority vote of non-operators for its removal and replacement by successor.

Given the standard of review we must employ, we find that the trial court could have rationally determined that the last peaceable, non-contested status between the parties during this lengthy litigation was the status of the parties prior to Tipperary's filing of the amended original petition, i.e., prior to the new controversy as to whether Tri–Star must comply with the affirmative vote for its removal as Operator. The trial court found that upon the effective date of the removal vote, Tipperary became the duly elected successor operator of the Comet Ridge Project. It was within the trial court's discretion to find that the status quo between the parties consisted in non-operator working interest owners having the contractual ability under the JOA to follow the provision for removal and selection of successor as written, which Tri–Star now challenges as invalid and requiring judicial determination of cause for removal. We overrule Issue Two.

### Probable Right of Recovery

In Issues Three and Six, Tri–Star challenges the trial court's finding of a probable right to recovery. While an applicant for a temporary injunction is not required to establish that he will finally prevail in the litigation, there must be probative evidence of a probable right of recovery. *See Walling*, 863 S.W.2d at 58; *Southwestern Savings & Loan Assoc. v. Mullaney Construction Co., Inc.*, 771 S.W.2d 205, 206 (Tex.App.-El Paso 1989, no writ). To establish a probable right of recovery, Tipperary and Intervenors must have a cause of action for which they may be granted relief. *See Walling*, 863

S.W.2d at 58; *Universal Health Servs., Inc.,* 24 S.W.3d at 577.

■ With respect to Tipperary's claim that Tri–Star has violated Tipperary's and Intervenors' contractual rights to remove it as the Operator and select a successor, the relevant JOA provisions are found in Article V:

*B. Resignation or Removal of Operator and Selection of Successor:*

1. **Resignation or Removal of Operator**: Operator may resign at any time by giving written notice thereof to Non–Operators. If Operator terminates its legal existence or is no longer capable of serving as Operator, it shall cease to be Operator without any action by Non–Operator, except the selection of a successor. Operator may be removed if it fails or refuses to carry out its duties hereunder, or becomes solvent, bankrupt or is placed in receivership, by the affirmative vote of two (2) or more Non–Operators owning a majority interest based on ownership as shown on Exhibit "A", and not on the number of parties remaining after excluding the voting interest of Operator. Such resignation or removal shall not become effective until 7:00 o'clock A.M. on the first day of the calendar month following the expiration of ninety (90) days after the giving of notice of resignation by Operator or action by the Non–Operators to remove Operator, unless a successor Operator has been selected and assumes the duties of Operator at an earlier date. Operator, after effective date of resignation or removal, shall be bound by the terms hereof as a Non–Operator. A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator.

2. **Selection of Successor Operator**: Upon the resignation or removal of Operator, a successor Operator shall be selected by the Parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor Operator is selected. If the Operator that is removed fails to vote or votes only to succeed itself, the successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A", and not on the number of parties remaining after excluding the voting interest of the Operator that was removed.

In its order, the trial court in part based its finding that Tipperary and Intervenors had shown a probable right of recovery on the following evidence presented at the hearing: (1) There was an affirmative vote by two or more non-operators owning a majority working interest under the Joint Operating Agreement (JOA) to remove Tri–Star as operator and to select Tipperary as operator; (2) those non-operators voting to remove Tri–Star as operator made the determination under Article V.B. [of the JOA] that Tri–Star had failed and refused to carry out its duties under the JOA; and (3) upon the effective date of the removal vote, Tipperary became the duly elected successor operator of the Comet Ridge Project but Tri–Star failed and refused to yield operations to Tipperary.

The trial court also found the following non-exclusive evidence supported the non-operators' determination that Tri–Star had failed or refused to carry out its duties: (1) By improperly assessing charges against

the Joint Account; (2) failing to supply reasonable information requested by the non-operators; (3) commingling TIPLAW (legal fees incurred by and billed by Tri–Star in connection with this suit) funds with other funds in the Joint Account; (4) unexplained classification and reclassification of amounts billed to the Joint Account; (5) failing to provide timely and proper adjustments to the Joint Account for surpluses in the foreign exchange account; (6) double-charging Tipperary and Intervenors on cash calls and subsequent billings; (7) allowing the premature loss of acreage relinquished to the Queensland government; and (8) its inability to sustain deliverable quantities of gas under existing contracts.

Tri–Star argues that the trial court erred and abused its discretion by granting the temporary injunction without making a judicial determination that Tri–Star had failed or refused to perform its duties as Operator under the JOA. According to Tri–Star, this judicial determination is a condition precedent to a valid vote for removal of Tri–Star as Operator. Further, Tri–Star contends that the trial court did not consider any standard or considered an improper standard in its order to remove Tri–Star as the Operator. Tri–Star argues that the trial court should have applied a gross negligence standard, or at the very least, there must be a showing of complete abdication of all activity and responsibility by abandonment or by allowing another party to conduct operations on the contract area. Alternatively, Tri–Star argues that the evidence in the record fails to support Tri–Star's removal as operator for allegedly "failing or refusing to carry out its duties."

Reviewing the evidence in the light most favorable to the trial court's order, we cannot conclude the trial court abused its discretion in finding a probable right of recovery. By Tipperary's amended original petition, it alleged that it had a right, based on a majority vote of the non-operators to be the successor Operator. Mr. David Bradshaw, CEO and Director of Tipperary, testified that Tipperary and Intervenors voted their interests to remove in January 1999. According to Mr. Bradshaw, Tri–Star was furnished with copies of the vote ballots and has not resigned operations. Mr. Bradshaw also testified as to the same result in the November 2000 ballot vote. Further, Mr. Bradshaw testified that it was Tipperary's position that Tri–Star has failed or refused to carry out or perform duties under the JOA.

In examining the JOA provisions to determine whether Tipperary has a probable right of recovery, the trial court could conclude that the JOA provisions were unambiguous and thus its terms should be given their plain, ordinary, and generally accepted meaning. *See Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). The trial court could conclude from the evidence that the non-operators determined that they had cause to remove Tri–Star as Operator. The trial court in a temporary injunction hearing is only required to find that Tipperary and Intervenors have a probable right of recovery with respect to their claim of non-compliance with the removal vote, not that they will ultimately prevail in the litigation.

Tri–Star also asserts in its Issue Nine that the temporary injunction is an abuse of discretion because it does not make a judicial determination that Tipperary would be a better operator than Tri–Star. Tri–Star's argument as presented goes to the merits of the case, and we do not reach the merits of the underlying case in an appeal from the granting of a temporary injunction. *See Texas Indus. Gas v. Phoenix Metallurgical Corp.,* 828 S.W.2d 529,

533 (Tex.App.-Houston [1st Dist.] 1992, no writ). We overrule Issues Three, Six, and Nine.

### Probable Injury

▉▉▉▉ In Issue Eight, Tri–Star contends that Tipperary and Intervenors presented no or insufficient evidence to show probable injury. Tri–Star also argues that Tipperary and Intervenors have an adequate remedy at law for money damages. Probable injury includes the elements of imminent harm, irreparable harm, and lack of adequate remedy at law for damages. *See Surko Enter., Inc. v. Borg Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.-Houston [1st Dist.] 1989, no writ). An irreparable injury is defined as an injury for which compensation cannot be made, or for which compensation cannot be measured by any certain pecuniary standard. *Texas Indus. Gas*, 828 S.W.2d at 533. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *See Universal Health Servs., Inc.*, 24 S.W.3d at 577; *Texas Indus. Gas*, 828 S.W.2d at 533.

In summary, the trial court's order states that its finding that Plaintiffs and/or Intervenors will suffer injury for which there was no adequate remedy at law was based in part on the following evidence: (1) The applicants are suffering ongoing and continuing harm because of Tri–Star's refusal to relinquish control over the day-to-day operations of the Comet Ridge Project; (2) Tri–Star's pace of project development demonstrates that it cannot, or will not develop the Contract Area in a manner that is sufficient for Tipperary and Intervenors to deliver the required minimum quantities of gas called for under existing contract; (3) Tipperary and Intervenors have lost acreage and will continue to lose acreage through relinquishment of the Queensland government due to Tri–Star's pace of development; and (4) the evidence established, at least, a threat of irreparable injury to real or personal property and thus, an injunction is appropriate under Section 65.011(5) of the Texas Civil Practice and Remedies Code irrespective of any remedy at law. As to each of the above findings, the trial court determined that it was impossible to measure by definite, certain, or useable pecuniary standard the damages caused and that such harm is imminent, irreparable, and lacks an adequate legal remedy.

To show probable injury in the interim, Tipperary introduced sufficient evidence as to Tri–Star's inability to produce the required minimum amounts of gas under Tipperary's long-term contracts, Energex 1, Energex 2, and QFAL, given Tri–Star's historic pace of development. Mr. Ken Ancell, a Tipperary executive, testified that Energex has the right to cancel its contract if Tipperary fails to deliver its minimum requirement. In Mr. Ancell's opinion, he did not think Tipperary could supply the maximum amount of gas to which Energex is entitled to under the two contracts. Mr. Ancell based his opinion on the amount of gas the Project was producing under Tri–Star's operation. According to Mr. Ancell, he did not see any way that Tri–Star as operator would be able to deliver the maximum daily quantity of gas under Energex 2 given the historical pace of the project to date. Mr. Ancell testified that he believes Energex 2 is at risk of cancellation if Tri–Star continues as operator. Mr. Ancell further testified that Tipperary will not be able to fulfill its obligations under the QFAL contract at Tri–Star's pace of development.

Tipperary also presented sufficient evidence to show that Tipperary and Intervenors will suffer irreparable harm by the loss of acreage and exploration rights to

the Comet Ridge Project. Mr. Ancell testified that under the Project's Authority to Prospect ("ATP")[1] the Queensland government requires eight new wells to be drilled, in addition to the Project's twenty-well program of which thirteen wells remain to be completed. The ATP also requires an additional twelve wells to be completed. In addition, Mr. Ancell estimated that the QFAL contract would require a minimum of eighty wells, thus ninety-two new wells would need to be drilled beginning November 1, 2002 to October 31, 2004. Mr. Ancell did not believe Tri–Star was capable of drilling and completing this number of wells in the twenty-four-month period. In addition to the possible loss of Energex 2 and QFAL contracts, Mr. Ancell testified that if the required wells are not drilled, the Project would have to relinquish acreage under the ATP. In Mr. Ancell's opinion, if Tipperary takes over operations now, there was a substantial likelihood that Tipperary could prevent some of these injuries and losses from occurring.

Tipperary and Intervenors presented sufficient evidence to show probable injury in the interim. It was within the trial court's discretion to determine that there was no adequate remedy for the loss of unexplored acreage in the Project or for the loss of long-term contracts. Moreover, the evidence of probable injury presented was sufficient to support the trial court's finding to grant a temporary injunction under Section 65.011(5) of the Texas Civil Practice and Remedies Code given the threat of irreparable injury to real or personal property irrespective of any remedy at law. *See* Tex.Civ.Prac. & Rem.Code Ann.

§ 65.011(5)(Vernon 1997). We overrule Issue Eight.

### *Mandatory or Prohibitive Injunction*

In Issue Seven, Tri–Star argues that the injunction is mandatory, rather than prohibitive. There are two types of temporary injunctions: prohibitive and mandatory. A prohibitive injunction forbids conduct, whereas a mandatory injunction requires it. *Universal Health Servs., Inc.*, 24 S.W.3d at 576; *See LeFaucheur v. Williams*, 807 S.W.2d 20, 22 (Tex.App.-Austin 1991, no writ). The issuing of a temporary mandatory injunction is proper only if a mandatory order is necessary to prevent irreparable injury or extreme hardship. *See LeFaucheur*, 807 S.W.2d at 22. While granting a mandatory injunction is within the sound discretion of the trial court, the grant should be denied absent a clear and compelling presentation of extreme necessity or hardship. *See Rhodia, Inc. v. Harris County*, 470 S.W.2d 415, 419 (Tex.Civ.App.-Houston [1st Dist.] 1971, no writ).

Tri–Star contends that the trial court in effect granted a mandatory injunction, which altered the status quo without a showing of extreme hardship or other special circumstance to justify this remedy. The temporary injunction order prohibits Tri–Star from interfering with Tipperary's assumption of control and operation of the Project as the successor Operator. The order also requires Tri–Star to relinquish operations and cease acting as Operator of the Project. We find that the trial court's injunction is prohibitive in nature. While the order requires Tri–Star to take some affirmative action in allowing Tipperary to assume operation of the Project, the action

---

**1.** An Authority to Prospect is an exploration license which gives the holder the right to explore and develop the subject acreage, but not the right to sell hydrocarbons. An ATP holder must apply for and obtain a petroleum lease from the Australian government in order to sell the produced product.

required on Tri–Star's part is incidental to its non-interference with the successor Operator's assumption of control in the interim. We overrule Issue Seven.

### Advanced Ruling on the Merits

■ A ruling on temporary injunctive relief may not be used to obtain an advance ruling on the merits. *See Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981). In Issue Four, Tri–Star contends that the temporary injunction order constitutes an advanced ruling on the merits on the issue of whether Tri–Star should be removed as operator.

In the underlying suit, Tipperary has asserted several claims against Tri–Star. Tipperary alleges that Tri–Star breached its contractual obligations under the JOA *inter alia:* by failing to provide full access to all its books and records and information regarding the Project and by failing to conduct operations in a good and workmanlike manner, which has resulted in damages in amounts in excess of one million dollars. Tipperary alleges that Tri–Star has breached the mediation and settlement agreements between the parties, that Tri–Star has committed civil conspiracy to defraud and to misapply fiduciary property by overcharging for goods and services and by failure to properly account for the non-operators' money and property. Tipperary also alleges fraud, breach of fiduciary duties, aiding and abetting a fiduciary in breach of its duties, negligence per se, gross negligence, and willful misconduct by violating Texas Penal statutes relating to misapplication of fiduciary property. Further, Tipperary seeks a full accounting and a constructive trust on all proceeds or profits arising out of the use of funds in dispute and injunctive relief to enforce the removal vote of the non-operator working interest owners.

The record does not reflect that the trial court ruled on the merits regarding Tipperary and Intervenors' probable right to recovery. Further, the injunctive relief granted does not fully grant the relief sought in their lawsuit. We overrule Issue Four.

### Arbitration Evidence

■ In Issues One and Five, Tri–Star attacks the trial court's granting of the temporary injunction and contends that the trial court erroneously relied on evidence that is subject to binding arbitration to justify removing Tri–Star as operator. At the hearing, Tipperary presented evidence related to joint billing disputes some of which were allegedly subject to an arbitration agreement. Tipperary introduced this evidence to establish a probable right of recover and irreparable harm. The trial court considered evidence of joint billing disputes, reasoning that this evidence was relevant to understanding the whole context of the request for injunctive relief.

Tri–Star relies on *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum,* 666 S.W.2d 604 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985), in support of its position that the trial court should have denied the temporary injunction with respect to issues subject to arbitration prior to an evidentiary hearing. The *McCollum* case involved breach of contract action against a former employee of a stock brokerage firm. *McCollum,* 666 S.W.2d at 606. Appellant Merrill Lynch challenged the denial of a temporary injunction to enjoin a former employee from further use of confidential information and further solicitation of Merrill Lynch clients. *Id.* at 606. The trial court denied the application based on a finding that all matters pled were subject to arbitration. *Id.* The *McCollum* Court

held that the trial judge did not abuse his discretion in determining that each count pled by Merrill Lynch was subject to arbitration. *Id.* at 607–08. Tri–Star asserts that while *McCollum* involved the Federal Arbitration Act, the Texas Arbitration Act also requires that the trial court stay a proceeding that involves an issue subject to arbitration. *See* Tex.Civ.Prac. & Rem. Code Ann. § 171.025 (Vernon Supp.2003).

In the present case, the trial court considered other evidence in addition to the evidence of joint billing disputes, which we find support its finding of probable recovery and probable injury. Even if we assume, without deciding, that the trial court erred in considering evidence that is allegedly outside its purview, Tipperary and Intervenors presented other evidence, discussed above, which was sufficient to support of their application for a temporary injunction. We overrule Issues One and Five.

Having overruled all of Tri–Star's issues for review, we affirm the trial court's judgment.