In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-073 CV


____________________



DSTJ, L.L.P., SUCCESSOR TO DSTJ CORPORATION


 AND MILESTONE OPERATING, INC., Appellants



V.



M & M RESOURCES, INC., ENERGY LAND RESOURCES 


A/K/A ENERGY LAND RESOURCES LAND SERVICES, 


A.M. PHELAN, III AND DANIEL PHELAN, Appellees






On Appeal from the 60th District Court


Jefferson County, Texas


Trial Cause No. A-172979






MEMORANDUM OPINION


 M&M Resources, Inc. filed a petition seeking a declaratory judgment that it owned
title to four mineral leases on a 210.5 acre tract in the Bennett Blackman Survey in Jefferson
County, Texas. DSTJ, L.L.P. also claimed it owned the mineral leases. M&M filed a motion
for a temporary injunction seeking to restrain DSTJ and Milestone Operating, Inc. (1) from
performing operations of any nature on the tract, the Quail No. 1 Well or Quail No. 2 Well. 
The trial court granted the temporary injunction. DSTJ filed this accelerated interlocutory
appeal raising two issues. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon Supp.
2005). Appellants contend the trial court abused its discretion by entering the injunction, and
appellee failed to demonstrate a probable right of recovery and irreparable injury for which
there is no adequate remedy at law. We overrule the two issues presented and therefore
affirm the trial court's order.

 In its motion for temporary injunction, M&M asserted defendants had brought a
workover rig and several vehicles on the lease M&M claimed it owned and were conducting
operations on the Quail No. 2 Well. At the injunction hearing, Anthony Phelan, the owner
of M&M, testified someone called him at the end of October 2005 and told him he had seen
a workover rig on M&M's lease. Phelan then drove to the property and found the workover
rig attempting to remove an obstruction from the well. Admitted into evidence were several
photographs taken on October 31, 2005, that showed the rig, various trucks, and other
equipment Phelan testified he observed at the site that day. 

 The decision to grant or deny a temporary injunction lies within the sound discretion
of the trial court. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002) (citing
Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993)). In an appeal from a temporary
injunction, this Court may not substitute its judgment for that of the trial court unless the trial
court's action was so arbitrary that it exceeded the bounds of reasonable discretion. Butnaru,
84 S.W.3d at 204. We view the evidence in the light most favorable to the trial court's order
and indulge every reasonable inference in its favor. Tri-Star Petroleum Co. v. Tipperary Oil
& Gas Corp., 101 S.W.3d 583, 587 (Tex. App.--El Paso 2003, pet. denied). Because no
findings of fact or conclusions of law were filed, we presume all findings necessary to
support the trial court's judgment and affirm if there is any legal theory sufficiently raised
by the evidence to support it. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978). If some
evidence reasonably supports the trial court's decision, the trial court does not abuse its
discretion. Butnaru, 84 S.W.3d at 211 (citing Davis, 571 S.W.2d at 862).

 The purpose of a temporary injunction is to preserve the status quo of the subject
matter pending a trial on the merits. Butnaru, 84 S.W.3d at 204. Appellants argue the
injunction does not maintain the status quo, but alters it by prohibiting them from exercising
their rights of exploration, development, and production in their leases. M&M maintains the
status quo is the lack of any drilling on the tract from the date operations ceased on Quail No.
1. The record reveals Quail No. 1 Well ceased production in March 2004 before suit was
filed July 28, 2004. The underlying dispute involves ownership of the leases. The trial judge
was free to conclude that from March 2004 until the end of October 2005, the status quo was
that DSTJ and Milestone had no ongoing production or drilling operations on the disputed
tract. (2) 

 Generally, the common law requires a party plead and prove three elements to obtain
a temporary injunction: a cause of action against the defendant; a probable right to the relief

sought; and a probable, imminent, and irreparable injury. Butnaru, 84 S.W.3d at 204. 
Section 65.011 of the Texas Civil Practices and Remedies Code sets out statutory
requirements for a writ of injunction, and section 65.001 provides that "[t]he principles
governing courts of equity govern injunction proceedings if not in conflict with this chapter
or other law." See Tex. Civ. Prac. & Rem. Code Ann. §§ 65.001, 65.011(Vernon 1997). 
Section 65.011 provides, in part, that a writ of injunction may be granted if "irreparable
injury to real or personal property is threatened, irrespective of any remedy at law." Id. §
65.011. To the extent the common law requires a different showing, the statute prevails over
the common law. Id. § 65.001. 

 Appellants mention but do not argue the "probable right of recovery" element in their
brief. Appellants' argument, which is combined under both issues, appears to be that there
is no showing of irreparable injury or inadequate legal remedy. An injury is irreparable when
the injured party cannot be adequately compensated by damages or the damages cannot be
measured by any certain pecuniary standard. Butnaru, 84 S.W.3d at 204. The statute does
not require a showing that an irreparable injury has occurred; the requirement is a showing
of a threat of irreparable injury. Ongoing and continuing harm resulting from an operator's
refusal to relinquish operations is one basis for finding irreparable injury in support of a
temporary injunction. See Tri-Star Petroleum Co., 101 S.W.3d at 591.

 Phelan testified regarding the threat of irreparable harm if a well was allowed to
operate on the property. He was asked, "[W]hat is the problem with having them go out and
do whatever work it is on Quail No. 2 and have it obtain production and, say, even if they
deposited 100 percent of the revenue, why is it that that would cause any irreparable harm
to your company?" Phelan responded, "Well, it would be like somebody coming up and
building a home on your piece of property, saying 'How did I harm you?' I mean, it's a
naked trespass." Phelan further explained the irreparable harm appellees would suffer if the
trial court did not restrain the operations of DSTJ: 

 So, if a company went out right now and decided to go for broke and pulled
the well real hard, you could ruin the formation and leave a lot of the
production behind that would have been produced if it were done more
prudently. 

 . . . .

 If it ruins the formation, you're not gonna be able to develop those minerals. 


Phelan also testified there were royalty owners who had not been paid. He indicated DSTJ
paid their royalties irregularly. 

 Phelan testified Terry Bomer, president of DSTJ and treasurer of Milestone, told him
DSTJ was not going to produce Quail No. 1 Well too hard because of her concern about the
formation. Bomer acknowledged it is possible to produce too much out of a well too quickly
so that long-term damage is ultimately done to the formation. She also testified the operator
of the well has the discretion to determine how fast the production will be, subject to the
allowable of the Texas Railroad Commission. She stated Milestone and DSTJ have no
intention of overproducing or pulling this well too hard.

 DSTJ relies on Texas Pacific Coal & Oil Co. v. Howard, 212 S.W. 735 (Tex. Civ.
App. --Fort Worth 1919, no writ), where the trial court dissolved a temporary injunction that
restrained defendants from drilling a well. Texas Pacific had leased mineral rights from
Howard, but the lease, by mutual mistake, omitted a one acre tract that was later purchased
from Howard by the defendants. Id. at 735-36. Defendant Jones testified that after he had
contracted to buy the acre, Texas Pacific had assured him the one acre was not in the leases. 
Id. at 738. Jones then attempted to develop the acre for oil and gas. Id. 

 Asserting irreparable harm from defendants' production of oil on the tract, Texas
Pacific sought a temporary injunction, which the trial court granted but later dissolved. Id.
at 735. The appellate court noted there was evidence Jones purchased various equipment,
including machinery and pipes, before Texas Pacific gave any notice of the alleged mistake,
and evidence Jones had drilled 3,300 feet and had spent $35,000 on the well. Id. at 738. The
appellate court concluded that where the injunction would cause the defendants' greater loss
and inconvenience than that suffered by the party requesting the injunction, the granting of
an injunction was doubtful. Id. The Court further found that the damage to Jones might be
irreparable, (3) and held the trial court did not err in dissolving the temporary injunction. Id.
at 738-39.

 In Texas Pacific, the reviewing court appeared to give discretion to the trial court's
balancing of the equities (on which both sides presented evidence) and concluded the
defendants, who had already expended large sums of money and had already conducted
significant drilling, would be harmed the most by the cessation of all operations. During the
injunction hearing in this case, Bomer testified defendants would be responsible for the costs
of the workover rig, but she initially presented no evidence of the costs. Bomer also
indicated there were safety issues associated with an abrupt shutdown, but she also testified
"we think it's safe."

 Two weeks later, the trial court held a hearing on appellants' motion to increase
appellees' bond. At the beginning of the hearing, the trial judge stated he had decided to
grant the temporary injunction that had been heard earlier and asked that an order be prepared
for him to sign. (4) The trial judge then considered appellants' motion on the bond increase and
heard appellants' evidence of significant damages. However, as appellants' witness
admitted, the damage models were predicated on the theory that DSTJ would lose the lease
as a result of the temporary injunction. The lease includes a provision that the time of any
suspension of operations due to an order under state law shall not be counted against the
lessee and the lease shall remain in force and effect during that period. The witness
acknowledged that the expenses incurred on the workover rig operation on Quail No. 2 in
October 2005 were $14,989. Appellants do not challenge the amount of the bond on appeal. 
In balancing the equities and weighing the testimony, it is apparent the trial court found
M&M's evidence concerning the threat of irreparable injury to be credible and sufficient to
warrant a temporary injunction despite appellants' evidence.

 Appellants argue that the injunction is overly broad and improperly restricts the
exercise of incidents of ownership. However, we do not read the injunction so broadly, or
as appellants urge in their reply brief, as prohibiting compliance with Texas Railroad
Commission regulations. We read the injunction as intended to maintain the status quo 
consistent with compliance with applicable regulations. (5)

 DSTJ also relies on Winslow v. Duval County Ranch Co., 519 S.W.2d 217 (Tex. Civ.

App.--Beaumont 1975, writ ref'd n.r.e). Unlike the instant case, however, the parties in
Duval were not claiming the same mineral rights. Id. at 219-20. The dispute was between
the surface owner and the mineral owners; the surface owner claimed permanent injury from
pollution of the surface owner's lands by the mineral owners' drilling operations. Id. at 220-23. 

 Viewing the evidence in the light most favorable to the trial court's ruling, the record
includes sufficient evidence of the threat of irreparable harm if DSTJ is allowed to conduct
operations before a trial on the merits. Section 65.011(5) does not require proof of an
inadequate remedy at law. In deciding whether to issue a temporary injunction, a trial court
balances the equities and the resulting hardships from issuance of, or denial of, the temporary
injunction pending a trial on the merits. See NMT C Corp. v. Conarroe, 99 S.W.3d 865, 869
(Tex. App.--Beaumont 2003, no pet.). Based on the record before us, DSTJ and Milestone
have not shown in this appeal that the district court acted outside the bounds of reasonable
discretion in granting the temporary injunction. Appellants' two issues are overruled. AFFIRMED.

 _________________________________

 DAVID GAULTNEY

 Justice


Submitted on May 2, 2006

Opinion Delivered May 18, 2006


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Milestone was not a party in the original declaratory judgment suit. M & M filed a
motion for temporary injunction against both DSTJ and the drilling company Milestone. 
2. There is testimony that since July 28, 2004, the date of the filing of suit, a workover
rig was at the lease property for about three days; a vacuum truck was there three or four
hours; and a bottomhole pressure survey was done for a couple of hours. There is also
evidence in the record that not until October 2005, over a year and a half after the cessation
of operations on Quail No. 1, did a workover rig contracted by Milestone actually commence
work at the Quail No. 2 Well. One witness testified, "There's been no production under
Quail 1 or Quail 2 since the filing of the lawsuit [on July 28, 2004]." 
3. In dicta, the Court explained oil is a fugitive mineral that may be under one person's
land one day and under another person's land tomorrow. Id. at 739. The Court pointed out
a receivership might protect the rights at issue in the case. Id. 
4. On November 29, 2005, the trial judge denied appellants' motion to increase the
bond. The initial order granting the temporary injunction was signed December 1, 2005. 

5. In a reply and supplemental brief filed in this Court, appellants present arguments
concerning Railroad Commission regulations that are not in the trial record. If there are any
specific issues concerning compliance with regulations, they should be brought to the trial
court's attention first as a consideration for modifying the injunction.